**Troy C. HUDSON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 429, 2007.

Supreme Court of Delaware.

Submitted: July 23, 2008.

Decided: Aug. 15, 2008.

Dean C. Johnson, Esquire, Assistant Public Defender, Georgetown, DE, for appellant.

Abby Adams, Esquire, Department of Justice, Georgetown, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

HOLLAND, Justice:

The defendant-appellant, Troy C. Hudson ("Hudson"), appeals from final judgments that were entered in the Superior Court. A jury found Hudson guilty of Possession of a Firearm During the Commission of a Felony, Possession with Intent to Deliver Cocaine, Possession of a Deadly Weapon by a Person Prohibited, Possession of Drug Paraphernalia, and Resisting Arrest. In this direct appeal, Hudson raises three claims. First, the trial judge erred by allowing the chief investigating officer to testify both as a fact

witness and as an expert witness. Second, even assuming that a police officer may testify as a fact witness and as an expert witness, Hudson argues this particular police officer was not qualified to testify as an expert and should not have been permitted to do so. Third, the trial judge erred in allowing the State, during trial, to "educate" the chief investigating officer about how to testify as an expert witness.

We have concluded that none of Hudson's claims have merit. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

Detective Lance Skinner, the chief investigating officer in this case, began his law enforcement career with the Selbyville Police Department. He later became a member of the Delaware State Police, assigned to the Selbyville area. Because of his familiarity with the area, Detective Skinner was invited to attend a meeting held by members of the Polly Branch community in Selbyville. Detective Skinner attended that meeting on January 15, 2007, accompanied by Corporal Hudson Keller. At the meeting, a Polly Branch resident reported frequent trespassing on her abandoned property, which was located in the community. After the meeting concluded at approximately 9:00 p.m., the two officers drove to the abandoned property in Detective Skinner's marked police vehicle.

Upon approaching the property, which was located in an area known as an "open air drug market," the officers noticed three men on the property, walking towards the front of a shed. The men were later identified as Hudson, McKineo Middleton ("Middleton"), and Roosevelt Bailey ("Bailey"). The officers shined their spotlight on the area. Middleton and Bailey stopped, but Hudson continued to walk toward the shed. Detective Skinner saw Hudson bend over. It appeared to him that Hudson was trying to hide something near the shed.

When Detective Skinner yelled "State Police," Hudson stood up and continued walking toward the back of the property at an increased pace. Detective Skinner pursued Hudson, and when he was four or five feet behind Hudson, Detective Skinner yelled again "State Police" and told Hudson to stop. Hudson did not stop and, upon reaching the corner of a trailer, turned the corner and began to run. As Detective Skinner was following Hudson, who was running alongside the trailer, he saw Hudson throw an object under the trailer. Hudson then discarded the rubber gloves that he was wearing.

At that point, Detective Skinner tackled Hudson to the ground. While they were still on the ground, Detective Skinner noticed a baggie underneath the trailer. Detective Skinner removed the baggie, which contained 8.10 grams of crack cocaine broken down into several pieces. Thereafter, Detective Skinner searched Hudson and found $680 in denominations of $20 (nineteen bills) and $50 (six bills) folded up in Hudson's left front pants pocket. Detective Skinner also recovered the rubber gloves that Hudson had thrown away. Detective Skinner and Corporal Keller subsequently conducted a search of the abandoned lot, during which Corporal Keller located a handgun leaning up against the shed behind a tire, next to another clear plastic baggie containing 0.75 grams of crack cocaine. No fingerprints were found on the handgun.

While Detective Skinner was pursuing Hudson, Corporal Keller approached Middleton and Bailey and patted them down. No drugs or money were found on their persons, and they were not arrested. Hudson was arrested and later indicted on

charges of Possession of a Firearm During the Commission of a Felony, Possession with Intent to Deliver Cocaine, Possession of a Deadly Weapon by a Person Prohibited, Possession of Drug Paraphernalia, and Resisting Arrest.

At Hudson's trial, Detective Skinner testified, as a fact witness regarding the events of January 15, 2007, and also as an expert on the issue of whether Hudson possessed the crack cocaine with an intent to deliver it or merely for personal use. During Detective Skinner's testimony as an expert, Hudson objected on grounds that Detective Skinner was not qualified to serve as an expert. A *voir dire* was conducted outside the presence of the jury. Thereafter, the Superior Court stated the following:

This officer clearly has the training and experience and the knowledge to be able to give those opinions. The problem that I have with his testimony at the moment is that he is intermingling what he knows about this case and his interest in this case, with his independence as an expert. And he starts using words [like] "I've arrested." ... "I did this." "I did that." And so all of a sudden he takes it out of the realm of being an expert who is independently using factors. [...]

There are lines that have been drawn. He does not quite know them yet. So I am going to give you until 11:00 o'clock to talk with him and discuss with him how he can testify as an expert, independent expert, based upon factors that he has evaluated in the case; as to why, based upon these factors, this case is ... one in which the defendant is distributing or intending to distribute versus personal possession.

But since he has not [testified as an expert] before and you have clearly not run it by him before, he starts intermin-

gling his personal opinions about this case or personal opinions about arrests he had made previously. [...]

So I will give you some time to work with him, ... to articulate to him the different distinctions that I am trying to make. There is no question in the Court's mind he is qualified. The DEA training in and of itself ... provide him this. He is a police officer and has done hundreds of drug arrests. He has committed an incredible amount of training and experience in this area. [...]

After a fifteen-minute recess, Detective Skinner's expert testimony resumed. Detective Skinner enumerated several factors used in determining whether someone possesses a controlled substance with an intent to deliver it or for personal use: "[1] [h]ow the drugs are packaged; [2] the quantity of the drugs; [3] how the drugs are broken down ...; [4] whether or not [the drugs] are in baggies ...; [5] does the person ... have U.S. [c]urrency on them; [6] the location [where] the person [is arrested]." Detective Skinner then opined that Hudson was possessing the crack cocaine with the intent to distribute it, because: (i) the area where Hudson and the others were located was known for illegal drug sales; (ii) the quantity of crack cocaine found was substantial (almost 9 grams); (iii) the drugs were packaged in a manner that would facilitate their sale; (iv) the drugs in the larger baggie were broken down into several pieces of .2 grams, each of which represented a "dose" that would typically be sold for $20; (v) Hudson carried $680 in denominations of $20 (nineteen bills) and $50 (six bills); (vi) police found no drug paraphernalia, such as a pipe, on Hudson's person (that would have indicated consumption), but instead found a handgun that drug dealers typically use for protection; and, finally (vii) Hudson was wearing gloves.

### Fact Witness and Expert Witness

 Hudson's first contention is that the Superior Court abused its discretion by allowing Detective Skinner, the chief investigating officer, to testify both as a fact witness and as an expert. This Court reviews decisions to admit or to exclude expert testimony for an abuse of discretion.[1] We review questions of law *de novo*.[2]

Hudson argues that, as a matter of law, the chief investigating officer in a criminal case should never testify at trial as an expert witness because such testimony will always present "the danger of unfair prejudice, confusion of the issues or misleading the jury."[3] Hudson relies on *Commonwealth v. Carter*,[4] where the Superior Court of Pennsylvania found that testimony from an officer both as a fact witness and as an expert was "highly prejudicial." Hudson's reliance on *Carter* is misplaced, however, because that case is distinguishable.

In *Carter*, the officer first described to the jury the defendant's actions that he had observed and then opined that the defendant was engaged in a drug transaction. The Pennsylvania Superior Court found that the officer's expert "opinion" was cumulative of his testimony as a fact witness because it was based exclusively on information that the officer had already described to the jury. In Hudson's case, there is no such overlap. The *Carter* court expressly distinguished cases where, as here, "an accused is found with a certain quantity of drugs [and] expert testimony may be offered by narcotics detectives concerning whether the facts surrounding the possession of the controlled substance were consistent with an intent to deliver rather than an intent to possess for personal use."[5]

This Court also has held that "allowing [an investigating officer] to provide expert testimony connecting the quantity and packaging of drugs with intent to deliver, in addition to testifying as a fact witness" is appropriate.[6] Thus, Hudson's first ar-

---

1. *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 522 (Del.1999).

2. *Outten v. State*, 720 A.2d 547, 551 (Del. 1998).

3. D.R.E. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

4. *Commonwealth v. Carter*, 403 Pa.Super. 615, 589 A.2d 1133 (1991).

5. *Id.* at 1135 (citing *Commonwealth v. Ariondo*, 397 Pa.Super. 364, 580 A.2d 341 (1990); *Commonwealth v. Robinson*, 399 Pa.Super. 199, 582 A.2d 14 (1990)).

6. *Hardin v. State*, 844 A.2d 982, 988 (Del. 2004). *See also, e.g., Norwood v. State*, 2003 WL 29969, at *2 (Del.Supr.) (finding no abuse of discretion by the trial court in allowing a detective to testify as the investigating officer and as an expert witness with respect to the factors distinguishing possession with intent to distribute from possession for consumption, where the requirements of D.R.E. 702 were satisfied by the detective's testimony that the factors listed were relied upon by all the members of her unit statewide, even if the reliability test of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) was not met); *Rodriguez v. State*, 1994 WL 276988, at *4–5 (Del. Supr.) (finding no abuse of discretion by the trial court in allowing a police officer to testify as a fact witness concerning his observations of the circumstances surrounding the execution of the search warrant and as an expert witness regarding the typical methods employed by drug dealers in transporting, storing and selling drugs); *State v. Drummond*, 2008 WL 2224105, at *3 (Del.Super.) (finding that the defendant was not deprived of a fair trial where the investigating officer testified as an expert that the drugs were intended for distribution and not for personal

gument is not only distinguishable from Carter but is directly contrary to settled Delaware law. Accordingly, we conclude that claim is without merit.

### Expert Qualifications Established

█ Hudson's second claim is that the trial judge abused his discretion in ruling that Detective Skinner was qualified to testify as an expert regarding Hudson's intent to deliver the crack cocaine as opposed to possession for personal use. Hudson contends Detective Skinner was not qualified to testify as an expert because he had received "little or no training outside that provided in-house by the Delaware State police and local agencies." The States submits that Hudson's argument is without merit because the record reflects that Detective Skinner had the necessary training and experience to qualify as an expert.

During a *voir dire* conducted outside the presence of the jury, Detective Skinner testified about his extensive training and experience in handling drug cases. The record reflects he has been a police officer since 1998, and in July 2001, he became a member of the Delaware State Police. In June or July of 2003, he became a member of the Governor's Task Force, where he remained for three and a half years. The majority of the cases Detective Skinner handled for the Governor's Task Force were drug-related. In January 2007, Detective Skinner became a detective with the Drug Task Force. In his current assignment, he has purchased crack cocaine from drug dealers approximately fifty times. He also has interviewed cooperating individuals for information on drug sales, the price of drugs in Sussex County, the location of open air drug markets, and the identity of the sellers.

The record further reflects that Detective Skinner's specialized training included classes in drug identification and field tests at the Delaware State Police Academy, a week-long Wicomico County "Narcotics Criminal Patrol" seminar in 1999, the Delaware State Police's "Handling Confidential Informants" course, and an advanced drug identification course, also offered by the Delaware State Police. He also has attended the week-long MAGLOLEN Narcotics Investigators Conference, where officers share information about the drug trade in their respective jurisdictions. Detective Skinner attended the two-week DEA Basic Narcotic Investigators School, which dealt with undercover operations and street-level and larger-scale drug dealing, and specifically included training in how to distinguish drugs that are intended for sale rather than personal use. He also attended Investigator's Fact School, a week-long course addressing in detail how drugs are packaged and sold in our region. He attended concealment devices school offered by the Delaware State Police, which addresses how drugs get into the community, including smuggling methods and concealment devices. He has also attended the DEA methamphetamine conference, which focused on those sales, but also addressed the sale of other drugs. Detective Skinner also took the Wicomico County Drug Smugglers Course, a two or three day course which addressed drug smuggling into the community through how the drugs make it to street dealers.

Finally, the record reflects that Detective Skinner has conducted several hundred drug investigations over the course of

consumption); *Jordan v. State,* 1993 WL 245391, at *1–2 (Del.Supr.) (affirming conviction where one of the undercover arresting officers testified as an expert witness that "in some cases, a drug dealer will act as 'the bank,' holding the money earned from the sale of drugs," while another associate would keep the drugs being sold).

his career. He has worked undercover purchasing drugs from dealers on approximately fifty occasions, the majority of which were purchases of crack cocaine. Although he has purchased trafficking-weight cocaine (ten or more grams), more frequently he has purchased about .4 grams of crack cocaine. Accordingly, we conclude that the record supports the trial judge's determination that Detective Skinner was qualified to testify as an expert witness.[7]

### Expert's Role Unfamiliar

■ As additional support for his second claim, Hudson also contends that Detective Skinner should not have testified as an expert witness because he had never before served in that capacity and was unfamiliar with the role of an expert witness, as reflected by the following exchange during *voir dire:*

[Defense counsel]: I understand, sir, from your statement to the judge, that you have never testified as an expert witness previously?

[Skinner]: That's correct.

[Defense counsel]: And do you understand, sir, the ramifications of testifying as an expert witness?

[Skinner]: *Somewhat,* yes. [...] Basically you're making a *decision* on whether or not someone was possessing with the intent to deliver a drug or just simply possessing it.

[Defense counsel]: Do you ..., because of the words you used, ... feel that you are going to be making the decision for the jury? [...]

[Skinner]: Yes[.] [...]

The State acknowledges that Detective Skinner was not familiar with the law of expert testimony. Nonetheless, the State argues that the trial judge did not abuse his discretion in allowing Detective Skinner to testify as an expert witness.[8] The exchange quoted above occurred during *voir dire,* which was conducted outside the presence of the jury. At the conclusion of the *voir dire,* the trial judge took a fifteen-minute recess to allow the State to explain to Detective Skinner his role as an expert witness and the appropriate manner in which to present his expert opinion.

Delaware Rule of Evidence 702 states that "a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of opinion or otherwise, if" three specific requirements are met. None of those requirements call for the expert to be familiar with the law of expert testimony or require him or her to be able to recite that law during *voir dire.* Therefore, we conclude Hudson's argument that Detective Skinner was not qualified to testify as an expert witness, because he is not familiar with the law of expert testimony, is without merit.

---

7. *See, e.g., Coppedge v. State,* 2005 WL 991252 *5-6 (Del.Supr.) (Detective qualified as drug enforcement expert where he had testified as an expert over sixty times, had been assigned to drug cases for seven years, had completed numerous training programs and made over 600 drug-related arrests); *Graves v. State,* 2003 WL 261796 *1 (Del.Supr.) (Officer qualified to testify as expert to assist jurors to understand drug packaging where officer had attended six police academy schools, received DEA training, "worked on a DEA task force, conducted undercover drug buys and had participated in several hundred drug investigations.").

8. D.R.E. 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

### Expert Testimony Required

■ In further support for his claim that Detective Skinner should not have been permitted to testify as an expert witness, Hudson maintains Detective Skinner's statement that his opinion was "common sense," undermines the State's need for any expert testimony. Hudson asks rhetorically why an expert witness is needed to explain common sense? The State submits that it was unable to rely on the common sense of the jury in the facts presented by Hudson's case. We agree. This Court has stated:

> This Court has long held that possession, quantity and packaging of drugs are not necessarily sufficient, standing alone, to prove intent to deliver. The State must prove an additional element beyond possession, quantity and/or packaging to establish that the defendant was not possessing the drugs for personal consumption. This element can take the form of expert testimony, an admission by the defendant, or some other credible evidence linking the amount and packaging of drugs [the defendant] possessed with any intent to deliver those drugs.[9]

In *Cline*, we held that "[t]he trier-of-fact may not infer intent to deliver as a matter of 'common experience'" because "[s]uch 'common experience' cannot be cross-examined by the defendant."[10] In this case, the State offered the required evidence of Hudson's intent by way of Detective Skinner's expert opinion and Hudson was able to cross-examine the detective regarding his expert opinion. Therefore, we conclude that Hudson's contention that expert testimony was not necessary is without merit.

### Bias Not Established

Hudson argues that Detective Skinner should not have testified as an expert because, in addition to his inherent bias as the chief investigating officer, he also lacked objectivity, as evidenced by Detective Skinner's failure to arrest Middleton and Bailey, the other two persons present on the abandoned property where Hudson was arrested. Hudson's contention about Detective Skinner's bias or lack of objectivity fails for two reasons. First, the record does indicate that Detective Skinner knew both Middleton and Bailey.[11] The record also indicates that Middleton and Bailey were not arrested because they, unlike Hudson, stopped when the police officers arrived at the lot and no drugs or money were found on them.

■ Second, "[i]t is well settled that the bias of a witness is subject to exploration at trial and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'"[12] Hudson was free to explore Detective Skinner's alleged bias or lack of objectivity, yet, he declined to cross-examine Detective Skinner before the jury. Hudson also was entitled to call a defense expert to rebut Detective Skinner's expert testimony, which he also did not do.

---

9. *Cline v. State*, 720 A.2d 891, 892–93 (Del. 1998). Although Detective Skinner thought his opinion was a matter of common sense, the State submits, and the record shows, that was because Detective Skinner has extensive specialized training and experience on which to base his opinion.

10. *Id.* at 893.

11. Bias "will not prevent a police officer from investigating a crime," nor "disqualify a witness from testifying altogether." *Stovall v. State*, 1998 WL 138931, at *2 (Del.1998).

12. *Weber v. State*, 457 A.2d 674, 680 (Del. 1983) (citing *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)).

### Trial Judge's Action Proper

■ Hudson final argument is that the trial judge erred in permitting the prosecutor to "educate" Detective Skinner on how to testify as an expert. At the conclusion of defense counsel's *voir dire*, the trial judge stated to the prosecutor:

Here's the dilemma. And I am going to give you some time to work through the dilemma. The State has decided in this case to not separate out the chief investigating officer from their expert witness. That raises ... concerns and issues because this officer has some legitimate interest in this case. He was the person who made the arrest.

Most of the time, when we have officers who testify as experts, it's not the chief investigating officer....

This officer clearly has the training and experience and the knowledge to be able to give those opinions. The problem that I have with his testimony ... is that he is intermingling what he knows about the case, with his independence as an expert. And starts using words, "I've arrested."

"When I arrested him, he had $20 and $50 bills." ...

And so all of the sudden he takes it out of the realm of being an expert who is independently using factors that [are] being given....

These are the lines that have been drawn. He does not quite know them yet. So I am going to give you [time] to talk with him and discuss with him how he can testify as an expert, independent expert, based upon factors that he has evaluated in the case; as to why, based upon these factors, this case is reflective of one in which the defendant is distributing or intending to distribute versus personal possession.

When Detective Skinner resumed his testimony before the jury, the defense again raised an objection to his qualifications as an expert witness and the court's actions in taking a recess, the trial judge responded:

As to the opportunity for the State to speak with the witness, it became clear to the Court that I wanted to ensure that before the testimony was given to the jury, so that the defendant would not be prejudiced by what the witness was going to say, that the State had an opportunity to have clearly advised this witness what was expected from an expert, and to give him 15 minutes to have a brief conversation with him because of the unique situation of this being the investigating officer. It is a practice that I would discourage....

So under that, I wanted to make sure that there was a clear delineation of his role as chief investigating officer versus his role as an expert. And if I did not do that, I was concerned that the line may blur to the detriment of the defendant. So I do not believe anything that the Court has done at this juncture, one, is not appropriate, or two, wasn't done with the hope of making the proceeding as fair as possible....

After the recess, Hudson identified no inappropriate comments by Detective Skinner during his testimony before the jury. Instead, Hudson argued that it was improper for the trial judge to give the State an opportunity to educate Detective Skinner on his role as an expert witness, because that was "akin to allowing the State to remove and rehabilitate [any] State's witness who has not testified to [the State's] satisfaction." The record reflects that was neither the purpose, nor the result, of the trial judge's action.

The trial judge stated that he allowed the State to educate Detective Skinner

about the role of an expert witness "so that the defendant would not be prejudiced by what the witness was going to say" and "with the hope of making the proceeding as fair as possible." The record reflects that the trial judge did not permit or encourage the prosecutor to "rehabilitate" the State's expert. "Rehabilitation" implies that Detective Skinner was not qualified or that his qualifications had been questioned by conflicting evidence or testimony.

Prior to the recess, however, the trial judge had ruled that Detective Skinner was qualified to testify as an expert, stating that he "clearly has the training and experience and the knowledge to be able to give those opinions." The trial judge's action in taking a recess was intended to avoid undue prejudice to Hudson by avoiding any mixture of Detective Skinner's fact testimony regarding his charging decision and his expert testimony regarding Hudson's intent to deliver. Therefore, we conclude that Hudson's final claim also is without merit.

### *Conclusion*

The judgments of the Superior Court are affirmed.