**James ASHLEY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 329, 2009.

Supreme Court of Delaware.

Submitted: Dec. 8, 2009.

Decided: Jan. 15, 2010.

---

Santino Ceccotti, Esquire, Office of the Public Defender, Wilmington, Delaware; for Appellant.

Danielle J. Brennan, Esquire, Department of Justice, Wilmington, Delaware; for Appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

JACOBS, Justice.

James Ashley ("Ashley"), the defendant below, appeals from a Superior Court final judgment of conviction. A jury found Ashley guilty of Possession with Intent to Deliver Heroin.[1] On appeal, Ashley claims that the Superior Court erred by denying his motion for judgment of acquittal because the evidence that Ashley intended to sell heroin was legally insufficient. We find no error and affirm.

### FACTS

On July 19, 2008, Officer John Iglio ("Iglio") of the Middletown Police "pulled over" a car, which Ashley was driving erratically. Iglio approached the car, told Ashley that he had been stopped for suspected DUI, asked for Ashley's license and registration, and called for backup to conduct a DUI investigation. When Ashley stepped out of the car, Iglio noticed a ripped and empty baggie on the car floor board. Iglio searched the car using a K–9 dog, and found 115 wax paper baggies, covered with plastic wrapping and stamped "Dead End." The baggies, which contained a net weight of 1.9 grams of heroin, were divided into 9 bundles wrapped with a black rubber band. Ashley, who was sweating profusely and was disoriented, was taken from the scene to a hospital. Ashley was arrested on July 21, 2008, at which time he told Iglio that he was a heroin user, was using a bundle a day, and was also taking methadone. Ashley was charged with Possession with Intent to Deliver a Narcotic Schedule I Con-

---

1. 16 Del. C. § 4751.

trolled Substance ("PWITD"), Use of a Vehicle for Keeping Controlled Substances, Disregarding a Stop Sign, and Driving a Vehicle while Under the Influence of Drugs.[2]

At trial, Detective Matthew Botterbusch ("Botterbusch") testified as an expert that, in his opinion, Ashley possessed the heroin with intent to deliver it. Botterbusch based his opinion on the number of baggies and bundles seized (which exceeded significantly what a mere user would ordinarily possess), and the fact that the packaging made the heroin readily available for distribution.[3] On cross-examination, Botterbusch conceded that the empty and torn baggie found in the car indicated that Ashley was a heroin user, and that other common indicia of distribution (such as the possession of large amounts of cash, sales ledger and communication devices) were not present.

After the conclusion of the State's case, Ashley moved for judgment of acquittal on both the PWITD and the DUI charges. The Superior Court denied the motion. The jury acquitted Ashley on the DUI charge and found him guilty of the remaining counts. Ashley moved again for judgment of acquittal on the PWITD charge. At the sentencing hearing, the Court denied the motion and sentenced Ashley to eight years Level V incarceration, suspended after the five years mandatory sentence for the PWITD charge. This appeal followed.

### ANALYSIS

■ On appeal, Ashley claims that the Superior Court erred by not acquitting him of the PWITD charge because the State failed to establish an element of the offense—that Ashley intended to *deliver* the heroin—beyond a reasonable doubt.

■ This Court reviews the denial of a motion for judgment of acquittal *de novo*, to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the crime.[4] Our review is guided by the principle "that the jury is the sole trier of fact responsible for determining witness credibility, resolving conflicts in testimony and for drawing any inferences from the proven facts."[5]

■ This Court has long held that to prove PWITD, the State must demonstrate "an additional element beyond possession, quantity and/or packaging to establish that the defendant was not possessing the drugs for personal consumption. This element can take the form of expert testimony, an admission by the defendant or some other credible evidence."[6] Ashley argues that the expert opinion presented at his trial rested solely on the quantity and packaging of the heroin, but disregarded the facts supporting exclusively personal use. Therefore, Ashley contends, his conviction of PWITD, based solely on quantity and possession, was without legal basis.

Ashley argues that the State "could not rely solely on the packaging, quantity, and possession of drugs in order to prove [a

---

2. The State entered a *nolle prosequi* on one count of Trafficking in Heroin.

3. Botterbusch explained that heroin addicts usually buy an amount sufficient "to fix their habit" and attempt to sell the heroin that they did not immediately consume.

4. *Cline v. State*, 720 A.2d 891, 892 (Del. 1998).

5. *Maddrey v. State*, 975 A.2d 772, 775 (Del. 2009) (internal quotation marks omitted).

6. *Cline*, 720 A.2d at 893.

defendant's] intent to deliver the drugs, *even in conjunction with expert testimony* opining that possession of certain quantities of drugs packaged in certain forms indicates that the possessor intends to sell the drugs." [7] That argument was previously addressed and rejected by this Court in *Hardin v. State.* [8]

Ashley identifies two distinct categories of cases in which the evidence was found sufficient to establish intent to deliver: (1) where there is a large quantity of narcotics and no indicia of personal use, and (2) where there is a large quantity of narcotics plus independent evidence of intent to distribute. Ashley claims that *Hardin* is distinguishable because it falls within the first category, whereas in this case there are indicia of personal use of heroin by Ashley. Therefore, Ashley concludes, absent "something more" than quantity, packaging and expert testimony, the evidence was insufficient to establish his intent to distribute the heroin.

■ We disagree. A drug user can also be a dealer. To convict of PWITD, the State must offer evidence sufficient to establish intent to deliver, but it is not required to prove that the defendant was not a user. [9] Here, the State offered sufficient independent evidence to establish Ashley's intent to deliver, namely, Botterbusch's expert testimony.

■ We agree that quantity and packaging alone are insufficient to establish intent to deliver, because a "trier of fact may not infer intent to deliver as a matter of 'common experience' [and] [s]uch 'common experience' cannot be cross-examined by the defendant." [10] However, an expert's testimony can establish the "additional element" of intent, because such testimony goes beyond mere inference and is subject to cross-examination. Ashley's counsel vigorously cross-examined Botterbusch to explore the possibility that the entire batch of heroin was solely for Ashley's personal use. Counsel examined Botterbusch on all possible indicia of personal use, [11] and on Ashley's claim that he consumed one bundle of heroin a day. [12] Botterbusch's credibility and the weight of his testimony following cross-examination were for the jury to determine. Viewed in the light most favorable to the State, Botterbusch's testimony, if believed, estab-

7. *Hardin v. State,* 844 A.2d 982, 988–89 (Del. 2004) (emphasis added).

8. *Id.*

9. *See Morales v. State,* 696 A.2d 390, 394 (Del.1997) (affirming conviction of PWITD "[a]lthough the defense demonstrated that the defendant was a heroin addict and elicited testimony that Morales might have possessed the small bags of heroin found inside his apartment for personal consumption" because "[t]he State need not produce evidence that is consistent *solely* with the reasonable hypothesis of guilt." Because the State "offered expert testimony that the packaging, weight, and quantity of the heroin found in Morales' apartment were consistent with an intent to deal the drugs rather than use them personally ... an alternative explanation of the facts that is consistent with innocence

does not mandate a finding of insufficient evidence") (internal quotation marks omitted; emphasis in the original).

10. *Cline,* 720 A.2d at 893; *see also Hudson v. State,* 956 A.2d 1233, 1240 (Del.2008) (affirming conviction of PWITD based on expert testimony even though the expert stated that his opinion was "common sense.")

11. *I.e.,* Ashley's physical condition upon his arrest—which is consistent with symptoms of withdrawal, the absence of money, arms, communication devices and other dealing-related paraphernalia such as digital scales, and the torn and empty baggie found in the car.

12. Moreover, Ashley was entitled to call a defense expert to rebut Botterbusch's expert testimony, which he did not do. *See Hudson,* 956 A.2d at 1240.

lished that the quantity and packaging of the heroin was inconsistent with a claim of exclusively personal use, and provided a sufficient basis for the jury to conclude that Ashley intended to distribute the drug.[13] Therefore, the Superior Court did not err in denying Ashley's motion for judgment of acquittal.

■ Ashley next argues that Botterbusch's expert testimony was not admissible under Delaware Rule of Evidence 702.[14] Ashley claims that because Botterbusch's opinion rests upon quantity and packaging of the narcotic alone, and ignores evidence indicative of personal use: (1) it was unsupported by sufficient facts, and (2) Botterbusch did not apply a reliable and scientifically testable approach in reaching his conclusion. Therefore, Ashley concludes, Botterbusch's expert opinion was scientifically unreliable and inadmissible under the DRE 702 codification of *Daubert v. Merrell Dow Pharm.*[15]

■ That argument attacks the trial judge's decision to allow Botterbusch to testify as an expert,[16] a decision that we review for abuse of discretion.[17] Here, no abuse of discretion is shown and, in any event, the argument is without merit. Ashley contends that Botterbusch did not apply a reliable and testable approach to the relevant facts because there are "no facts to apply anything to," not because Botterbusch's methodology was flawed. This argument assumes that *no* expert opinion could possibly conform to the requirements of Rule 702, if the conclusion is that Ashley intended to distribute the heroin. That assumption ignores case law explicitly holding that expert testimony can establish the "additional element" of intent to deliver. Ashley's complaint is not with the expert's *method*, but rather with his *conclusion* that it was unlikely that all nine bundles of heroin were solely for Ashley's personal use.[18] Any infirmity in that conclusion involved a fact question that was presented to the jury through cross examination.[19] The jury resolved this fact issue against Ashley.

Therefore, the trial judge did not abuse her discretion in finding that Botterbusch

13. *White v. State*, 2003 WL 23019194 at *2 (Del. Dec.24, 2003) (holding that expert testimony based on quality and value of drugs and lack of "paraphernalia consistent with *purely personal use*" is a sufficient basis to conclude intent to deliver) (emphasis added).

14. D.R.E. 702 provides:
> If scientific technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

15. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See Gen. Motors Corp. v. Grenier*, 981 A.2d 531, 536 (Del.2009) ("Because Delaware Rule of Evidence 702 is identical to the federal rule, this Court adopted *Daubert*, and its progeny, as the law governing the admissibility of expert evidence.")

16. A *voir dire* examination of Botterbusch was held outside the presence of the jury.

17. *Baxter v. State*, 788 A.2d 130 (Table) 2002 WL 27435 at *2 (Del. Jan.3, 2002).

18. Botterbusch testified that he had never encountered a user possessing as much as 3 bundles of heroin, let alone 9 bundles.

19. *Compare Gen. Motors Corp. v. Grenier*, 981 A.2d at 538 (holding that a trial court did not abuse its discretion in admitting expert testimony, where the expert considered the defendant's contradictory theory but concluded that there was no scientific data supporting that theory).

was qualified to testify as an expert [20] and that his testimony was reliable.[21]

### CONCLUSION

For the reasons stated above, the judgment of the Superior Court is **AFFIRMED.**

**20.** Botterbusch had over 200 hours of training, three years of experience with the Drug Control Unit of the New Castle County Police Department, and has participated in over 100 drug investigations.

**21.** *See Norwood v. State,* 813 A.2d 1141 (Table) 2003 WL 29969 at *2 (Del. Jan.2, 2003) (stating that failure to conform to the *Daubert* factors in the context of expert testimony on "intent to deliver" is not fatal, as the factors and testimony do not lend themselves to peer review and reliability rates). The focal question is whether the testimony will assist the trier of fact in the ultimate determination regarding personal use versus intent to deliver drugs.