CATHY ROSS,[1] Petitioner Below-Appellant,
v.
GARY ROSS, Respondent Below-Appellee.
No. 403, 2009.
Supreme Court of Delaware.
Submitted: January 8, 2010.
Decided: April 7, 2010.
Before STEELE, Chief Justice, HOLLAND, and BERGER, Justices.

ORDER
This 7th day of April 2010, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:
(1) This proceeding involves two good parents who both love their children. They have shared custody. The appellant, Cathy Ross ("the Mother"), filed this appeal from a judgment of the Family Court, dated June 25, 2009. The Family Court's order granted primary residential placement of the parties' two minor children, ages six and two, to the appellee, Gary Ross ("the Father"). Having reviewed the parties' respective contentions and the record below, we find that the record does not support the Family Court's findings and conclusions. Accordingly, the Family Court's order is REVERSED, and this matter is REMANDED for further proceedings consistent with this Order.
(2) The record reflects that the parties were married in October 2000 and separated in July 2008. The parties have two sons who, at the time of their separation, were almost six and almost two. After the birth of their first son in 2002, the parties agreed that the Mother, who is seventeen years younger than the Father, had a greater opportunity for career advancement and should continue to work full-time. The Father quit his job to stay home with their child. He operated a small daycare from the marital home and continued to stay home after their younger son was born. After the parties separated, the Father returned to work full-time.
(3) Upon their separation, the parties signed a separation agreement drafted by the Father, who previously had been divorced twice. Among other things, the agreement provided that the parties would share legal custody of the children and that the children would have their primary residence with the Father, who would remain in the marital home. The Mother testified that, based on the parties' discussions, her understanding was that the parties would share time equally with the children but that establishing one parent's address as the primary residence was necessary for school and medical purposes.
(4) In July and August of 2008, the first two months of their separation, the parties were communicating effectively in working out a flexible schedule so that the Mother could see the children as frequently as her work schedule permitted. The Mother testified that she only had the children for eight overnight visits in July because she had allowed the Father to keep all of the children's furniture and belongings at the former marital residence and it took her some time to acquire new beds for the children at her house. In August, she had the children for eleven nights.
(5) In September, the Mother consulted with a lawyer and discovered her mistake in believing that joint legal custody was equivalent to shared residential custody. The Mother filed her petition for shared residential custody in September 2008 so that, by court order, she would be entitled to spend equal time with the children, as she believed was intended in the parties' separation agreement. The Mother testified that, after she filed her petition, the Father unilaterally refused to allow her to have anymore overnight visits with the children during the week. The Father testified that he made this decision after his older son began exhibiting problems, such as bedwetting. The Father did not seek any type of counseling for the child, however.
(6) At mediation, the parties entered into an interim consent order dated January 7, 2009. The consent order provided the Mother visitation with the children for two weekends per month beginning at 5 p.m. on Friday evening until Monday morning, when she dropped the children at school and daycare. In months with five weekends, the Mother had an additional overnight weekend visit. With respect to midweek visits, the Mother had visitation every Wednesday and two Tuesdays per month from 5 p.m., or pickup from school or daycare, until 8 p.m.
(7) The Family Court held a hearing on the Mother's petition for shared residential custody on May 7, 2009. The Mother presented five witnesses including herself, a family friend, her older son's teacher, her current husband, and her step-mother. The Father presented four witnesses including himself, a friend, the Mother's estranged former step-sister, and the Mother's estranged former step-mother. None of the witnesses questioned the fitness of either party as a parent. The Family Court also separately interviewed the parties' six-year-old son. On June 25, 2009, the Family Court entered an order awarding joint custody to the parties, with primary residential placement with the Father. The reasons the Family Court gave for its decision were that the Father had been the primary caretaker of the children from the time they were very young. The court also expressed concerns about the Mother's work hours, despite her testimony that her employer had been, and would continue to be, flexible with her job location and hours when the children were with her.[2] The Family Court also concluded that shared placement would not be in the children's best interests because of a lack of communication between the parties. In addition to awarding the Father primary placement of the children, the Family Court's order also reduced the Mother's visitation as provided in the parties' interim consent order.
(8) The Mother raises two issues in her opening brief on appeal. First, she contends that the Family Court erred by refusing to allow her to testify regarding two issues. The first issue concerned the Father's relationship with the Mother's former step-sister, who testified on the Father's behalf. The Mother contends that the evidence was relevant both because it related to one of the best interest factors and because it related to the bias of her former step-sister.[3] The Mother also asserts that the Family Court erred in refusing to allow her to testify about the difficulties she had getting pregnant and giving birth because the evidence was relevant to her strong commitment to having a family and wanting to be more involved in her children's daily lives. The Mother's second argument on appeal is that the Family Court erred by failing to grant her petition for shared residential custody and by, sua sponte, decreasing her visitation.[4]
(9) Our standard of review of a decision of the Family Court extends to a review of the facts and law, as well as inferences and deductions made by the trial judge.[5] We have the duty to review the sufficiency of the evidence and to test the propriety of the findings.[6] Findings of fact will not be disturbed on appeal unless they are determined to be clearly erroneous.[7] We will not substitute our opinion for the inferences and deductions of the trial judge if those inferences are supported by the record.[8]
(10) Under Delaware law, the Family Court is required to determine legal custody and residential arrangements for a child in accordance with the best interests of the child. The criteria for determining the best interests of the child are set forth in Section 722 of Title 13 of the Delaware Code.[9] The criteria in Section 722 must be balanced in accordance with the factual circumstances presented to the Family Court in each case. As this Court has noted, the weight given to one factor or combination of factors will be different in any given proceeding.[10] Because it is possible that the weight of one factor will counterbalance the combined weight of all other factors and be outcome determinative in some situations, we have held that the Family Court must address each aspect of Section 722 explicitly rather than implicitly.[11]
(11) In this case, the Family Court enumerated all of the factors set forth in Section 722 and recounted testimony from the hearing relative to each factor. In its recitation of the testimony, however, the Family Court did not assess the credibility of the testimony, nor did it analyze whether any of the best interest factors weighed in favor of either the Mother or the Father.[12] After its summary of the testimony, the Family Court concluded that shared placement was not a viable option because of the Mother's work schedule and because of the lack of communication between the parties. We have reviewed the facts and the law in this case, as well as the trial judge's inferences and deductions. Given the record before us, we find that the Family Court's conclusions are not supported by the record.
(12) In concluding that the Mother would not be available to the children "on a sufficient appreciative level," the Family Court pointed to testimony regarding the Mother's work hours during the parties' marriage, when the Father had stayed at home with the children. It failed to acknowledge in its conclusion, however, that presently both the Father and the Mother work full-time outside the home and that both boys spend their days in school and/or daycare. The Mother testified, without contradiction, that her employer has allowed her to change her work schedule so that she is able her to drop off and pick up the children from school and daycare when they are with her and that she does not work on those weekends when they are with her. The testimony reflected that she is home with them in the evenings for dinner and to help her older son with homework. The Mother testified that her employer would continue to be flexible with her work schedule if she received shared placement. Given that uncontested testimony, the Family Court's conclusion that the Mother would not be available "to the children on a sufficient appreciative level" is not supported by the record.
(13) The record also does not support the Family Court's conclusion that shared placement was not a viable option because of the parties' lack of communication. Both the Father and the Mother testified that, in the months before the Mother filed her petition, the parties were communicating and working cooperatively to make arrangements for the children so that the Mother could spend as much time with them as possible. The testimony reflected that face-to-face communication between the parties had become strained after the Mother filed her petition (and the Father subsequently refused to allow the children to spend the night with the Mother during the week). To the extent that the parties' communications became strained after the Father unilaterally eliminated the Mother's midweek overnight visits with the children, any strain in communication should not be weighed against the Mother. Moreover, both parties testified at the time of the hearing that they continued to communicate with each other about the children via other methods, such as emails, notes, and text messages. Accordingly, the evidence presented at trial does not support the Family Court's finding of a "lack of communication."
(14) The Mother raises one final point in support of her argument that the Family Court erred in denying her petition. She contends that the Family Court's decision is contrary to the current policy in Delaware favoring shared residential placement of children, which is expressed in the Family Court Contact Guidelines.[13] The Guidelines, which were amended in May 2009, state that, "Recent Child Development research indicates that children accustomed to interaction with both parents on a daily basis should continue to have regular and frequent contact. The Court's goal is to have the children spend as much quality time with each parent at possible." Thus, for children five years and older, the amended Guidelines favor "shared contact...which may be extended to alternate weeks." While we note this change to the Family Court Contact Guidelines, we do not find that the Mother's argument provides an independent basis for reversal in this case.[14]
(15) The factual record does not support the Family Court's conclusion that primary placement with the Father was in the children's best interests. Under the particular circumstances of this case, we hold that the Family Court erred in denying the Mother's petition for shared residential placement.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is REVERSED. The matter is REMANDED to the Family Court for further proceedings consistent with this Court order. Jurisdiction is not retained.
NOTES
[1] The Court assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).
[2] The Family Court noted that, "The Court certainly is not penalizing Mother for having a successful career; however, it must consider each parent's availability to the child on a sufficient appreciable level."
[3] Although we need not reach that issue in this appeal, we note that the bias of a witness is subject to exploration at trial and that evidence of bias is "always relevant as discrediting the witness and affecting the weight of his testimony." Hudson v. State, 956 A.2d 1233, 1240 (Del. 2008) {quoting Weber v. State, 457 A.2d 674, 680 (Del. 1983)).
[4] Because we find that the Family Court erred in denying the Mother's petition for shared placement, we need not reach the other issues in the Mother's opening brief.
[5] Solis v. Tea, 468 A.2d 1276, 1279 (Del. 1983).
[6] Wife (J.F.V.) v. Husband(O. W. V., Jr.), 402 A.2d 1202, 1204 (Del. 1979).
[7] Mundy v. Devon, 906 A.2d 750, 752 (Del. 2006).
[8] Wife (J.F.V.) v. Husband (O. W. V., Jr.), 402 A.2d at 1204.
[9] Section 722(a) provides:

The Court shall determine the legal custody and residential arrangements for a child in accordance with the best interests of the child. In determining the best interests of the child, the Court shall consider all relevant factors including:
(1) The wishes of the child's parent or parents as to his or her custody and residential arrangements;
(2) The wishes of the child as to his or her custodians(s) and residential arrangements;
(3) The interaction and interrelationship of the child with his or her parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, any other residents of the household or persons who may significantly affect the child's best interests;
(4) The child's adjustment to his or her home, school and community;
(5) The mental and physical health of all individuals involved;
(6) Past and present compliance by both parents with their rights and responsibilities to their child under § 701 of this title; and
(7) Evidence of domestic violence as provided for in Chapter 7A of this title.
[10] Fisher v. Fisher, 691 A.2d 619, 623 (Del. 1997).
[11] Id.
[12] Under the factor it labeled "The Wishes of the Child as to His or Her Custodians and Residential Arrangements," the Family Court stated, "The Court interviewed the oldest child, who is approximately six years old. The Court gives the information provided by the child the appropriate weight...." As with the other enumerated factors, there is no indication what weight, if any, the Family Court actually gave to the older child's interview.
[13] The Family Court Contact Guidelines, as amended in May 2009, are available at http://courts.delaware.gov/How%20To/Visitation/7visitation.htm.
[14] While the amended Guidelines express a policy favoring shared residential placement, it must be emphasized that the Guidelines are not a substitute for the statutory analysis required by 13 Del. C. § 722. See Siple v. State, 701 A.2d 79, 83 (Del. 1997) (holding that deviation from sentencing guidelines provides no basis for appellate review of a sentence once it is established that the sentence is within statutory limits).