IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DIVISION OF FAMILY SERVICES, | § § § | No. 175, 2016 |
| Respondent Below, Appellant, | § § § | Court Below—Family Court of the State of Delaware |
| v. | § § | File No: CN16-01443 Petition No: 16-03036 |
| MARK O'BRYAN,[1] | § § | |
| Petitioner Below, Appellee. | § § § | |

Submitted: May 3, 2017
Decided: May 31, 2017

Before **STRINE**, Chief Justice; **VAUGHN**, and **SEITZ**, Justices.

Upon appeal from the Family Court: **AFFIRMED**.

Victoria Witherell, Esquire (*argued*) and Jonathan Harting, Esquire, Department of Justice, Wilmington, Delaware for Respondent Below, Appellant Division of Family Services.

Mark O'Bryan, Petitioner Below, Appellee, *pro se*.

Leslie B. Spoltore, Esquire, Fox Rothschild LLP, Wilmington, Delaware; George R. Tsakataras, Esquire, The Law Office of George R. Tsakataras, P.A., Wilmington, Delaware; Achille C. Scache, Esquire (*argued*), Giordano, DelCollo, Werb & Gagne, LLC, Wilmington, Delaware, *Amicus Curiae* in Support of Petitioner Below, Appellee, Mark O'Bryan.

**SEITZ**, Justice:

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

The Child Protection From Sex Offenders Act (the "Sex Offenders Act" or "Act") establishes "a rebuttable presumption that no sex offender shall be awarded sole or joint custody of any child, that no child shall primarily reside with a sex offender, and that no sex offender shall have unsupervised visitation with a child."[2] With certain exceptions, the sex offender can rebut the presumption by demonstrating his compliance with the conditions in the statute.

This appeal raises one issue—whether the Sex Offenders Act and its rebuttable presumption operate outside of Family Court custody proceedings. We conclude, as did the Family Court, that the General Assembly intended that the Act and its rebuttable presumption to operate only when the Family Court determines custody, residency, and visitation as part of a Family Court custody proceeding. We therefore affirm the Family Court's order.

## I.

The facts of this case are essentially undisputed.[3] Mark O'Bryan lives in Delaware with his wife, their daughter, and his wife's two daughters. They lived together as a family for over eight years. O'Bryan is the sole financial provider for the family.

---

[2] 13 *Del. C.* § 724A(a).
[3] DFS argued that the Family Court inaccurately described O'Bryan's criminal history since 2002. Opening Br. at 7. Regardless, DFS agrees that "the issue presented is a question of law and not one of fact." *Id*.

On January 13, 2016, O'Bryan's wife hit and scratched him during an argument. O'Bryan called the police to de-escalate the situation. The police ended up filing criminal charges only against O'Bryan's wife. Although not involved in the altercation, one of O'Bryan's stepdaughters (then age 17) and his biological daughter (then age 2) were present during the incident. Because the children were witnesses to the fight, DFS conducted a follow up investigation.

DFS learned as part of its investigation that O'Bryan was a Tier II sex offender because of his 2002 guilty plea to rape fourth degree.[4] DFS went to the family home on February 3, 2016, and told O'Bryan that, based on his status as a Tier II sex offender,[5] and children living in the home, O'Bryan had to leave. O'Bryan left the family home that night.

The next day, O'Bryan filed a petition in the Family Court to return home. The Family Court granted the petition on an *ex parte* basis pending a hearing scheduled for February 9, 2016. At the February 9 hearing, DFS argued that the Sex Offenders Act prohibited O'Bryan from primarily residing with any child unless he rebutted the statutory presumption. O'Bryan, his wife, and a DFS representative testified at the hearing. His wife testified that she wanted her husband to return

---

[4] The incident involved a fifteen-year-old when O'Bryan was twenty-one years old.

[5] In Delaware, an individual designated as a sex offender is assigned to one of three Risk Assessment Tier levels. 11 *Del. C.* § 4121(c). The tier assignment is based on the seriousness of the offense committed, with Tier III being the most restrictive. *Id*. § 4121(d).

home, and that she had no concern about him being around her or her children.[6]

O'Bryan admitted that if the Act applied, he was unable to rebut the presumption because he did not complete his sex offender therapy.[7]

The Family Court judge asked the DFS witness whether there were concerns about the children's safety. The DFS witness testified that DFS had "no proof of anything" and had "no reason to believe that anything specifically ha[d] happened to these kids other than there had been domestic violence in their presence."[8] O'Bryan also was not under any restrictions as a Tier II sex offender, such as restrictions limiting his contact with children.

On March 8, 2016, the court granted O'Bryan's petition to return home, and held that:

> 13 *Del. C.* § 724A does not on its face provide for the removal of a parent from the home of an intact family, nor can the Court conclude that the legislature intended for the statute to apply in such a manner. Section 724A merely creates a presumption that a sex offender parent will not be awarded custody, primary residency[,] or unsupervised visitation by the Court, without first rebutting the presumption. The Court is not awarding any type of custody or residency in instances where there is no dispute between parents or between a parent and DFS. In instances where there is no ongoing custody issue, the registered party is not required to rebut the presumption and there actually is no forum in which to apply the presumption.[9]

---

[6] App. to Opening Br. at 15 (Hearing Transcript, February 9, 2016).
[7] *Id*. at 10.
[8] *Id*. at 13.
[9] *M.O. v. Div. of Family Servs.*, 2016 WL 3128334, at *3 (Del. Fam. Feb. 9, 2016).

DFS has appealed the Family Court's order and argues that the Sex Offenders Act prohibits any children from residing with a Tier II or III sex offender unless the sex offender first rebuts the Act's presumption by satisfying the six conditions in the Act. In response, O'Bryan contends that the Family Court correctly interpreted the Sex Offenders Act. According to O'Bryan, the Act only operates in Family Court custody proceedings. In other words, the Act does not grant DFS authority to require a sex offender to leave a family home. Our review of the Family Court's interpretation of the Act is *de novo*.[10]

## II.

The General Assembly enacted the Sex Offenders Act "to protect children from sex offenders by presuming that it is not in the best interests of a child to be placed in a custodial, residential or unsupervised visitation arrangement with a sex offender, regardless of whether the sex offender's victim was an adult or a child."[11] A "sex offender" is "any person designated by the courts of this State as a Risk Assessment Tier II or III sex offender under § 4121 of Title 11, or a person designated and treated as such by a court or a jurisdiction outside of Delaware, regardless of whether the sex offender's victim was an adult or a child."[12] Section 724A of the Act imposes a rebuttable presumption "that no sex offender shall be

---

[10] *See Cordero v. Gulfstream Dev. Corp.*, 56 A.3d 1030, 1035 (Del. 2012).
[11] 13 *Del. C.* § 722A.
[12] *Id.* § 723A.

awarded sole or joint custody of any child, that no child shall primarily reside with a sex offender, and that no sex offender shall have unsupervised visitation with a child."[13]  With certain exceptions, a sex offender can overcome the presumption by satisfying the six factors listed in the Act.[14]  The Family Court decided that the rebuttable presumption operated only in pending custody proceedings, which can include not just legal custody, but also residency and visitation determinations by the Family Court.

DFS's argument on appeal is relatively simple.  Recognizing that "custody" is "awarded" under the statute, which implies a pending Family Court custody proceeding, DFS parses the language of § 724A into "three separate and distinct dependent clauses": (1) the "Custody Clause" – "that no sex offender shall be awarded sole or joint custody of any child"; (2) the "Residency Clause" – "that no child shall reside primarily with a sex offender"; and (3) the "Visitation Clause" –

---

[13] *Id*. § 724A.
[14] Under 13 *Del. C.* § 724A(b):
> (1) There is not a criminal sentencing order prohibiting same;
> (2) There have been no further sexual offenses or criminal acts of violence; and
> (3) The sex offender is in compliance with the terms of probation, if applicable; and
> (4) The sex offender has successfully completed an intensive program of evaluation and counseling designed specifically for sex offenders and conducted by a public or private agency or a certified mental health professional, and as a result of such, does not pose a risk to children; and
> (5) The sex offender has successfully completed a program of substance abuse counseling if the court determines such counseling is appropriate; and
> (6) The best interests of the child would be served by giving residential or custodial responsibilities for the child or visitation with the child to the sex offender.

"that no sex offender shall have unsupervised visitation with a child."[15] According to DFS, if each of the clauses operate independently, the Residency Clause "states clearly and unequivocally that no child shall reside with a sex offender" and "does not limit the residency prohibition to children who are the subject of a pending petition."[16] Thus, according to DFS, it had the power to require O'Bryan to leave the family home until he rebutted the statutory presumption.

By isolating the clauses in § 724A, however, and treating them as independent requirements, DFS violates a fundamental rule of statutory construction—that a statute's words and phrases should not be read in isolation.[17] Instead, the statute must be read as a whole, mindful of the legislative intent expressed in the purpose of the statute.[18] When the clauses referring to "custody," "residency," and "visitation" are placed in their proper statutory context, it is apparent that they are all terms of art used in custody proceedings and do not operate as stand-alone

---

[15] Opening Br. at 9.

[16] *Id*. at 10.

[17] "Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear . . . ." *Terex Corp. v. S. Track & Pump*, 117 A.3d 537, 543 (Del. 2015) (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 371 (1988)); *see also Coleman v. State*, 729 A.2d 847, 851 (Del. 1999) ("Statutory enactments must be read as a whole and not in parts. 'Consequently, each part of the statute must be read in context to produce a harmonious whole.'" (quoting *Daniels v. State*, 538 A.2d 1104, 1110 (1988))).

[18] *See Zambrana v. State*, 118 A.3d 773, 776 (Del. 2015); *see also Dawson v. State Farm Mut. Auto. Ins. Co.*, 980 A.2d 1035, 1038-39 (Del. Super. 2009) ("[T]he Court must construe the statute in a way that will promote its apparent purpose and harmonize it with other statutes within the statutory scheme. In other words, the statute must be read as a whole in a manner that avoids absurd results." (internal quotation marks omitted)).

restrictions. Thus, the General Assembly intended § 724A's rebuttable presumption to operate only when the Family Court determines custody, residency, and visitation as part of a Family Court custody proceeding.

A.

The Sex Offenders Act is part of Subchapter II of Chapter 7A of Title 13, which deals exclusively with Family Court custody proceedings. In a Family Court custody proceeding, the court determines "the legal custody and residential arrangements for a child in accordance with the best interests of the child."[19] Whether the parents are awarded joint custody or one parent has sole legal custody, the Family Court must determine "with which parent the child shall reside and a schedule of visitation with the other parent . . . ."[20] Thus, it is logical that the Sex Offenders Act would refer not just to the court's custody "award," but also to its residency and visitation determinations in custody proceedings. Indeed, the statutes governing custody proceedings require that the custody determination be made in compliance with the Sex Offenders Act—"[a] custody proceeding between parents

---

[19] 13 *Del. C.* § 722(a). Legal custody involves a parent's decision-making authority over the child, while residential custody concerns residential placement and visitation scheduling. *See Batch v. Anderson*, 47 A.3d 971, 2012 WL 2282506 (Del. June 18, 2012) (TABLE) (affirming Family Court's award of residential custody to the mother and awarding the father joint legal custody with regular visitation); *Ross v. Ross*, 992 A.2d 1237, 2010 WL 1404220 (Del. Apr. 7, 2010) (TABLE) (dispute arose over mother's confusion of the difference between legal and residential custody); *Re: K.T. v. S.T.*, 2017 WL 2080297, at *1 (Del. Fam. Apr. 10, 2017) (parents filed cross petitions for primary residential custody and for legal custody regarding medical decisions).

[20] 13 *Del. C.* § 728(a). As the statutory scheme contemplates, residency and visitation are both integral parts of custody proceedings.

7

shall be determined in accordance with §§ 722, 729, *and Chapter 7A* [The Child Protection from Domestic Violence and Sex Offenders Act] of this title, whichever shall apply."[21]

B.

Turning to the language of the Sex Offenders Act, DFS's interpretation cannot be reconciled with the General Assembly's use of the term "rebuttable presumption." A rebuttable presumption "is a true rule of evidence and its only effect is to shift the burden of producing evidence."[22] Without a pending case, there is no burden of proof to shift. Here, the only way O'Bryan could have rebutted the presumption— as DFS suggested he should—is if a proper party in a custody case under Chapter 7 of Title 13 brought a petition under that Chapter for custody, residency, or visitation against him.[23]

---

[21] *Id*. § 721(e) (emphasis added). In other parts of Title 13 Chapter 7 the terms "residency" and "visitation" refer exclusively to a Family Court's determination as part of a custody proceeding. *See id.* § 722(a) (listing factors a court must consider when awarding primary residency to a parent); *id.* § 722(b) (no presumption that a court should award primary residency to one parent based on their sex); *id.* § 728(a) (requiring the court to determine with which parent the child will primarily reside and to schedule visitation with the other parent); *id.* § 729(b) (permits the court to modify an order concerning custody or residency entered with the parties' consent in accordance with the standards listed in § 722); *id.* § 729(c) (permits the court to modify an order concerning custody or residency entered after a hearing if certain conditions are met); *id.* § 728(b) (if after a hearing, the court finds that a parent has interfered with the other parent's court-ordered visitation or residency, the court may award extra visitation or temporarily transfer custody or primary residency to the other parent).

[22] Francis H. Bohlen, The Effect of Rebuttable Presumptions of Law Upon the Burden of Proof, 68 U. PA. L. REV. 307, 307 (1920).

[23] 13 *Del. C.* §§ 721-33.

8

DFS's interpretation is also inconsistent with the stated purpose of the Act. The General Assembly enacted the legislation "to protect children from sex offenders by presuming that it is not in the best interests of a child *to be placed* in a custodial, residential or unsupervised visitation arrangement with a sex offender, regardless of whether the sex offender's victim was an adult or a child."[24] The use of the word "placed" necessarily means that there must be an underlying petition to determine placement in a custody, residency and visitation proceeding. As the Family Court held, "[i]f there is no pending action, the children are not being placed anywhere."[25]

The provisions surrounding § 724A also reinforce the conclusion that its rebuttable presumption applies only to Family Court custody proceedings. Section 725A and its requirements apply only when the Family Court "*grant[s]* custody, residential responsibilities or visitation to a sex offender under this chapter."[26] Likewise, § 727A provides specific instructions for modifying orders entered by the court under the Act.[27] And, § 728A prohibits mediation in any custody or visitation *proceeding* in which one party is a sex offender.[28] Thus, when Section 724A is read in the context of other provisions in the Chapter within which it rests, those

---

[24] 13 *Del. C.* § 722A (emphasis added).
[25] *M.O.*, 2016 WL 3128334 at *2.
[26] 13 *Del. C.* § 725A (emphasis added).
[27] *Id.* § 727A.
[28] *Id.* § 728A (emphasis added).

provisions lead to the conclusion that § 724A's rebuttable presumption was meant to apply only in Family Court custody proceedings.

Finally, the statute does not provide a basis for DFS to remove a parent from an intact home. Section 724A(d) lists two specific instances when DFS may become involved,[29] neither of which are applicable in this case. DFS only became involved with O'Bryan's family when he and his wife fought in the presence of two of their children—an altercation in which his wife, not he, was eventually charged. Because the circumstances in § 724A(d) were not met, and coupled with DFS's admission that it had "no reason to believe that anything specifically has happened to these kids other than there has been domestic violence in their presence," § 724A did not provide a basis for DFS to remove O'Bryan from his family home.

DFS does have broad authority to bring custody proceedings under another chapter of Title 13 if it believes a child or children must be protected. That statute—Chapter 25 of Title 13—encompasses situations where DFS believes a child is in danger of being sexually violated.[30] But, in those proceedings, DFS has the burden

---

[29] *Id.* § 724A(d):

> In those cases in which more than 1 party is a sex offender, or where the party currently having custodial rights has permitted the sex offender to exercise residential or custodial responsibilities for the child or have visitation with the child, in violation of a criminal or civil court order, the case shall be referred by the court to the Division of Family Services of the Department of Services for Children, Youth and Their Families for investigation as to whether the child is abused, dependent or neglected as a result of these circumstances.

[30] The statute provides:

10

of persuasion,[31] and the presumption in § 724A does not apply. DFS has not brought an action under Chapter 25, even though the sex offender status of a parent or guardian may be relevant in a petition for custody under that Chapter.[32]

## III.

The statute, 13 *Del. C.* § 724A, unambiguously establishes a rebuttable presumption that the Family Court should not award custody, primary residency, or unsupervised visitation to a sex offender in a pending custody proceeding. Here, there was no such petition, and thus the statute did not provide DFS authority to order O'Bryan to leave his family home.

The judgment of the Family Court is affirmed.

---

[T]he Court may issue an ex parte order awarding emergency custody to DSCYF and order removal of a child from the home upon the establishment that: (1) Continuation in the home is contrary to the welfare of the child; and (2) Probable cause exists to believe that: a. A child continues to be in actual physical, mental or emotional danger or there is a substantial imminent risk thereof or; b. Immediate or irreparable harm may result to the child if such an order is not issued. *Id.* § 2512.

[31] *Id.* § 2511 (requiring DFS to make allegations as part of its petition for custody).

[32] *See, e.g., Dep't of Servs. for Children, Youth & Their Families v. M.G.*, 2015 WL 6456760 at *2 (Del. Fam. July 20, 2015).