Rudolph HARDIN Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 419,2003.

Supreme Court of Delaware.

Submitted: Feb. 3, 2004.

Decided: March 11, 2004.

Nicole M. Walker, Office of the Public Defender, Wilmington, for Appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, for Appellee.

Before VEASEY, Chief Justice, HOLLAND and JACOBS, Justices.

VEASEY, Chief Justice:

In this appeal we consider whether certain drug evidence should have been suppressed at trial because Wilmington police officers lacked the requisite level of cause to search the defendant's person and car and to seize the evidence found during those searches. We conclude that the evidence was admissible under the plain view and inevitable discovery doctrines. We also conclude that the Superior Court acted within its discretion when it permitted an investigating officer to provide both fact and expert testimony at trial. We further determine that the State offered sufficient evidence of the defendant's intent to deliver the drugs found in his possession to support his conviction for possession with intent to deliver cocaine. We find that the defendant waived his final argument on appeal by failing to raise it in the Superior Court. We therefore affirm the judgment of the Superior Court.

*Facts*

On September 13, 2000, Detectives Sullivan, Chickadel, and Freebery of the Wilmington Police Department were on patrol in Wilmington in an unmarked FBI vehicle when Sullivan was approached by an informant who had provided the police with reliable information in the past. The informant said that a heavy-set black male wearing a blue hooded sweatshirt was sitting in a black Lincoln Continental near the corner of Fourth and Rodney Streets, selling crack cocaine.

The officers and other FBI task force members proceeded to the corner of Fourth and Rodney Streets, where they observed a man fitting the informant's description sitting in a black Lincoln Continental. The officers observed the man, later identified as the defendant, Rudolph Hardin, leave the car, walk over to a nearby house, and sit on the steps leading to the porch of the house. Chickadel ordered Hardin to stand up and put his hands on the porch. The detective then searched Hardin, finding seven small plastic bags of crack cocaine.

As Chickadel searched Hardin, Sullivan and Freebery approached Hardin's car. The front windows were down. Sullivan put his head into the car through the open driver's side window, and he then saw and seized a plastic bag of marijuana on the driver's door console. As Sullivan located and seized the marijuana, Freebery, who was standing outside the vehicle on the passenger's side, looked into the car and saw a plastic bag containing crack cocaine protruding from under the sun visor. Freebery reached into the car, grabbed the bag, and lowered it into Sullivan's hands.

Hardin was indicted on charges of trafficking cocaine, possession of cocaine with intent to deliver, maintaining a vehicle for keeping controlled substances, and possession of marijuana. Before trial, Hardin moved to suppress the drug evidence as the fruit of an unlawful search and seizure. The Superior Court denied the motion. A jury found Hardin guilty of all the charges against him. Hardin then moved for judgment of acquittal on the ground that the State had failed to provide sufficient proof of intent to deliver for the jury to consider the possession with intent to deliver charge. The court denied the motion. Hardin appeals from his conviction and sentence.

### The Searches and Seizures: Plain View and Inevitable Discovery

Hardin first claims on appeal that the officers did not have the requisite level of cause to search either Hardin or his car. He asserts that the drug evidence found as a result of the searches should have been suppressed as the fruit of an illegal search and seizure. The State argues that the officers had probable cause to search Hardin.[1] It also contends that the officers observed the drugs in plain view in Hardin's car and that their observation of the drugs made it inevitable that the officers would arrest Hardin and discover the other drugs as the result of a search incident to his arrest.

The cocaine found under the sun visor was properly seized under the plain view doctrine. The marijuana found in the car and the cocaine found on Hardin were then rendered admissible by the inevitable discovery doctrine. Because we conclude under the plain view and inevitable discovery doctrines that the Superior Court did not err by admitting the evidence, we need not decide whether the officers, ab initio, properly searched Hardin's person or seized the marijuana.

The "plain view" doctrine is one exception to the exclusionary rules under the Fourth Amendment's warrant requirement for seizures. Under that doctrine, "[t]he mere observation of an item in plain view does not constitute a Fourth Amendment search. However, even if the item is contraband, the mere observation of an item in plain view generally does not permit its warrantless seizure."[2] A law enforcement officer may seize, without a warrant, contraband that the officer observes in plain view, but only if (1) the officer is lawfully in a position to observe the contraband, (2) the item's evidentiary value is immediately apparent, and (3) the officer has a lawful right of access to the item.[3]

The first two conditions for seizure of an object in plain view are easily satisfied with respect to the cocaine found under the sun visor. While standing outside Hardin's vehicle, Freebery observed the bag of cocaine. He was lawfully in a position to observe the drugs.[4] From his

---

**1.** The State seems to have conceded at argument in the trial court that the officers' search of Hardin went beyond a *Terry*-type investigatory stop, *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that the officers therefore required probable cause to conduct the search. We therefore assume that the officers required probable cause and a valid exception to the warrant requirement in order to search Hardin and his vehicle and seize the drugs.

**2.** *Williamson v. State,* 707 A.2d 350, 358 (Del. 1998) (footnote omitted).

**3.** *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Williamson,* 707 A.2d at 358.

**4.** *See Texas v. Brown,* 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (holding that an officer's bending down and using a flashlight in order to obtain a better view into a car did not violate the driver's Fourth

vantage point outside Hardin's vehicle, Freebery saw "a rock-like substance . . . consistent with crack cocaine." Thus, the evidentiary value of the substance was immediately apparent to Freebery.

■ Determining whether the officers had a lawful right of access to the cocaine requires a more detailed analysis. Because of the requirement that officers have legal access to contraband observed in plain view, such observation may merely serve as the "basis for probable cause or reasonable suspicion of illegal activity," [5] without excusing the warrant requirement. "In turn, these levels of suspicion may, in some cases, justify police conduct affording them access to a particular item." [6] In other words, plain view does not itself afford police *warrantless access* to an item that may be observed from a public place.[7]

Nevertheless, United States Supreme Court authority supports the conclusion that Freebery's warrantless intrusion into Hardin's vehicle in order to seize the co- caine was permissible. In *Texas v. Brown,* a police officer assisting with the operation of a routine driver's license checkpoint stopped the defendant Brown's car in order to check his license.[8] Shining his flashlight into the car, the officer observed a knotted party balloon, similar to those that he knew from previous experience were frequently used to package drugs.[9] After the officer shifted his position in order to be able to see into the glove compartment, which Brown had opened when asked to produce a driver's license, the officer observed several small vials, loose white powder, and an open bag of party balloons.[10] The officer ordered Brown out of the car, reached into the car and seized the first balloon, which seemed to contain a powdery substance.[11] Officers arrested Brown and conducted an inventory search of the vehicle, which revealed other narcotics-related evidence.[12] The balloon was determined to contain heroin.[13]

Brown challenged the admission of the evidence, arguing that it was the fruit of

Amendment rights because "[t]here is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers" (citations omitted)); *Robertson v. State,* 704 A.2d 267, 268–69 (Del.1997) (stating that an object may be in plain view for Fourth Amendment purposes when it is observable by police in the normal course of their investigative duties, such as by shining flashlights into areas not accessible by ordinary observation). *Cf. Arizona v. Hicks,* 480 U.S. 321, 328, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) ("[A] truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it— is not a 'search' for Fourth Amendment purposes, and therefore does not even require reasonable suspicion.").

   Hardin argues that the officers did not properly seize the marijuana under the plain view doctrine because Sullivan leaned into the car before he observed the marijuana in the armrest. We need not decide this issue, however, because if the officers properly

seized the cocaine from under the sun visor, the issue whether the marijuana was properly seized may be left to analysis under the inevitable discovery doctrine.

5. *Brown,* 460 U.S. at 739 n. 4, 460 U.S. 730.

6. *Id.* (citation omitted).

7. *See id.* at 738, 103 S.Ct. 1535 ("'[P]lain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment.").

8. *Id.* at 733, 103 S.Ct. 1535.

9. *Id.* at 734, 103 S.Ct. 1535.

10. *Id.*

11. *Id.*

12. *Id.* at 735, 103 S.Ct. 1535.

13. *Id.*

an illegal search and seizure. The United States Supreme Court held that the seizure was justified under the plain view doctrine. The Court focused primarily on the doctrine's requirements that the officer lawfully be in a position to observe the contraband and that the evidentiary value of the item be immediately apparent. The Court noted, however, that the officer's "warrantless, physical intrusion into Brown's automobile ... was proper, assuming that the remaining requirements of the plain-view doctrine were satisfied." [14] On this basis, we conclude that Freebery's seizure of the cocaine from behind Hardin's sun visor was also proper.

■ Because the seizure of the cocaine in plain view from Hardin's vehicle was permissible, the marijuana seized from the car and the drugs found on Hardin's person were admissible as well. The "inevitable discovery" exception to the exclusionary rules "provides that evidence, obtained in the course of illegal police conduct, will not be suppressed if the prosecution can prove that the incriminating evidence 'would have been discovered through legitimate means in the absence of official misconduct.'" [15] Here, the drugs found during the search of Hardin himself and the marijuana found in the car's armrest inevitably would have been discovered following the seizure of the cocaine in plain view in Hardin's car. After finding the cocaine under the sun visor, the officers

would have arrested Hardin. They then lawfully could have searched Hardin incident to his arrest. [16] The search would have revealed the drugs that Hardin was carrying. Those drugs, therefore, were admissible under the inevitable discovery doctrine. Likewise, after seizing the cocaine from the car and arresting Hardin, the officers would have been justified in searching Hardin's vehicle. [17] Officers would have found the marijuana during such search. The marijuana, therefore, was also admissible.

### The Detective's Testimony Regarding Intent to Deliver

■ In his second claim of error, Hardin contends that the Superior Court abused its discretion by allowing Sullivan to testify, as an expert, that the packaging and quantity of drugs in Hardin's possession demonstrated that Hardin intended to deliver the drugs. Hardin objected to Sullivan's testifying as an expert witness because Sullivan was also a key fact witness in the case. Hardin asserted that Sullivan's testimony as both a fact and expert witness would confuse the jury by bolstering its assessment of the credibility of Sullivan's factual testimony. We review for abuse of discretion the Superior Court's evidentiary rulings, including its decisions regarding expert testimony. [18]

---

14. *Id.* at 741 n. 6, 103 S.Ct. 1535.

15. *Cook v. State*, 374 A.2d 264, 267–68 (Del. 1977).

16. *See id. Jones v. State*, 745 A.2d 856, 872 (Del.1999) ("A peace officer has the right to seize and search any person whom the officer observes breaking the law. The search is justified as incident to a lawful arrest.").

17. *See Thomas v. State*, No. 143, 1992, 1992 WL 397480, at **1, **2, 1992 Del. Lexis 440, at *4 (Del. Nov. 30, 1992) (ORDER) ("A

search incident to a valid arrest of persons who are in, or recently have been in, an automobile extends to the entire passenger compartment and all containers open or closed found there."); *see also id.* ("[S]ince Thomas was arrested and placed in custody the police were entitled to search his vehicle for inventory purposes. Thus, discovery of the weapon would have been inevitable.").

18. *Zimmerman v. State*, 693 A.2d 311, 313 (Del.1997).

In order to prove intent to deliver the State must prove something beyond possession, packaging, and quantity of drugs.[19] Proof of this additional element may take the form of expert testimony connecting the quantity of drugs with intent to deliver.[20] Hardin does not challenge Sullivan's qualification to provide such expert testimony. He simply contends that the State was required to procure such testimony from an expert who was not one of the arresting officers and fact witnesses at trial.

The Superior Court did not abuse its discretion by allowing Sullivan to provide expert testimony connecting the quantity and packaging of drugs with intent to deliver in addition to testifying as a fact witness. Hardin relies on *State v. Ruthardt*[21] for the proposition that an arresting officer's testifying as both a fact and an expert witness significantly increases the risk that the jury will overestimate the probative value of the officer's factual testimony. The *Ruthardt* court held that arresting officers in DUI cases could not testify as experts about the results of the horizontal nystagmus test.[22] The holding was based, however, on the court's conclusion that officers did not have sufficient training or experience to testify as experts regarding the test under the DUI training then provided by the state. The court specifically stated that an arresting officer might in the future be qualified to testify as an expert regarding the test if additional training and experience were provided and proven.[23] *Ruthardt* fails to support Hardin's argument.

Because Sullivan's qualifications as an expert in the area in which he testified were not in question, the Superior Court did not err by permitting him to testify as a fact witness and as an expert witness. Police officers frequently testify as both fact and expert witnesses.[24] Hardin has provided no persuasive reason why this Court should now interrupt that practice.

### The Sufficiency of Proof of Intent to Deliver

In his third argument on appeal, Hardin asserts that the State failed sufficiently to prove Hardin's intent to deliver the drugs. He contends that the State could not rely solely on the packaging, quantity, and possession of drugs in order to prove his intent to deliver the drugs, even in conjunction with expert testimony opining that possession of certain quanti-

---

19. *Cline v. State*, 720 A.2d 891, 892–93 (Del. 1998).

20. *Id.* at 892–93 & n. 7; *see also Husser v. State*, No. 121, 1987, 1987 WL 4631, at **1–**2, 1987 Del. Lexis 1245, at *2–4 (Del. Oct. 16, 1987) (ORDER) (holding that evidence of the packaging and quantity of drugs coupled with expert testimony that the drugs were packaged for street sale were sufficient to prove intent to deliver).

21. 680 A.2d 349, 361–62 (Del.Super.Ct.1996).

22. *Id.*

23. *Id.* at 361 n. 23.

24. *See, e.g., Morris v. State*, No. 687, 2002, 2003 WL 22097056, at **1, 2003 Del. Lexis 444, at *4 (Del. Sept. 8, 2003) (ORDER) (re- counting the trial at which one of the arresting officers testified both as a fact witness and as an expert witness on the issue of intent to distribute drugs); *Norwood v. State*, No. 274, 2002, 2003 WL 29969, at **2, 2003 Del. Lexis 3, at *3–5 (Del. Jan. 2, 2003) (ORDER) (reviewing the expert testimony of a police officer who gave expert testimony regarding intent to distribute drugs and also testified as a fact witness); *Morales v. State*, 696 A.2d 390, 392 (Del.1997) ("At trial, Detective Rodriguez testified both as an eye witness and as a drug expert. In his capacity as an expert, Detective Rodriguez opined that the drugs that were found in Morales' apartment were consistent with the conclusion that Morales possessed the drugs with the intent to sell them.").

ties of drugs packaged in certain forms indicates that the possessor intends to sell the drugs. Hardin therefore appeals from the Superior Court's denial of his motion for judgment of acquittal with respect to the possession with intent to deliver charge. We review de novo the Superior Court's denial of Hardin's motion for judgment of acquittal to determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of all the elements of the crime. For the purposes of this inquiry, this Court does not distinguish between direct and circumstantial evidence of defendant's guilt." [25]

■ The evidence was sufficient to support the charge that Hardin possessed the drugs with the intent to sell them. Hardin relies on *Cline v. State* [26] to argue that the evidence against him was insufficient. In *Cline*, this Court held that "evidence only of the amount and packaging of the drugs the defendant possessed as well as defendant's flight from apprehension" were not sufficient to establish a defendant's intent to deliver the drugs:

The State presented no expert testimony connecting Cline's activities that night with those typical of a person dealing drugs as distinct from a person possessing drugs for his or her own personal use. This Court has long held that possession, quantity and packaging of drugs are not necessarily sufficient, standing alone, to prove intent to deliver. The State must prove an additional element beyond possession, quantity

and/or packaging to establish that the defendant was not possessing the drugs for personal consumption. This element can take the form of expert testimony, an admission by the defendant, or some other credible evidence. The State presented no credible evidence linking the amount and packaging of drugs Cline possessed with any intent to deliver those drugs.

The trier of fact may not infer intent to deliver as a matter of "common experience." Such "common experience" cannot be cross-examined by the defendant. [27]

In the present case, by contrast, the State presented expert testimony to link the amount and packaging of the drugs seized from Hardin with an intent to deliver those drugs. Detective Sullivan testified, based on his experience and training in drug investigation, that the packaging materials and the quantities of drugs found in Hardin's possession indicated that Hardin intended to sell the drugs. Sullivan also testified that officers did not find in Hardin's possession any drug paraphernalia associated with personal drug use. Quantity and packaging in addition to the lack of paraphernalia for personal consumption are sufficient to support a finding of intent to deliver. [28] The Superior Court did not err by denying Hardin's motion for judgment of acquittal.

### The Sufficiency of Proof of Possession of the Cocaine Found in the Car

■ Hardin's fourth and final claim on appeal is that the evidence was insuffi-

25. *Cline v. State*, 720 A.2d 891, 892 (Del.1998) (footnote omitted).

26. 720 A.2d 891 (Del.1998).

27. *Id.* at 892–93 (footnotes omitted).

28. *See White v. State*, No. 271, 2003, 2003 WL 23019194, at **2, 2003 Del. Lexis 640, at *8–9 (Del. Dec. 24, 2003) (ORDER) ("[T]he testimony of the State's trial expert established that the quantity and value of the cocaine was inconsistent with a claim of personal use, and that no paraphernalia consistent with purely personal use was found. A reasonable jury, therefore, had a sufficient basis to conclude that the cocaine was intended for distribution.").

cient to support a jury verdict that Hardin was guilty of possession of the cocaine that was found under the sun visor in Hardin's car. This Court ordinarily reviews such a claim of insufficiency of the evidence "to determine 'whether any rational trier of fact, viewing the evidence in the light most favorable to the [prosecution], could have found the essential elements of the charged offense beyond a reasonable doubt.' "[29] Hardin did not raise this issue below, however. This Court will not review any question "not fairly presented to the trial court" unless the interests of justice require such review.[30] Hardin has not provided any cause for his failure to raise this issue in the Superior Court. The claim therefore has been waived.[31] The Superior Court's failure to consider whether the State satisfactorily proved possession of the drugs found under the sun visor of Hardin's car does not rise to the level of plain error that would warrant review of the claim now.[32] This is particularly true because Hardin moved for a judgment of acquittal on this charge, but he challenged only the intent element of the possession with intent to deliver cocaine charge and not the possession element.

▬▬▬ Even had Hardin not waived this issue, the claim fails on its merits.

The State presented sufficient evidence to establish Hardin's constructive possession of the drugs under the sun visor.[33] "[T]he custodian of an automobile is presumed, by reason of his status as custodian, to have dominion and control of contraband found in the automobile; ... if, under the totality of the circumstances, such dominion and control may be found to be a conscious dominion and control, the evidence is sufficient to warrant the conclusion of 'possession' as to the custodian."[34] Under the totality of the circumstances, the evidence warranted the conclusion that Hardin had conscious dominion and control of the drugs found in his car. Officers found other drugs on Hardin's person. In addition, the marijuana and at least a portion of the bag containing the cocaine were visible from inside the car. The State satisfactorily established that Hardin constructively possessed the drugs found in his car.

### Conclusion

Accordingly, the judgment of the Superior Court is **AFFIRMED**.

**29.** *Campbell v. State,* No. 388, 2001, 2002 WL 1472283, at **5, 2002 Del. Lexis 415, at *14 (Del. June 27, 2002) (alteration in original) (quoting *Morrisey v. State,* 620 A.2d 207, 213 (Del.1993)).

**30.** DEL. SUPR. CT. R. 8.

**31.** *See Monroe v. State,* 652 A.2d 560, 563 (Del.1995) ("A claim of insufficiency of evidence is reviewable only if the defendant first presented it to the trial court, either in a motion for a directed verdict or a Rule 29 motion for judgment of acquittal. Absent any such motion, the claim is waived.").

**32.** *See id.* ("This Court may excuse a waiver, however, if it finds that the trial court committed plain error requiring review in the interests of justice.").

**33.** *See* DEL. CODE ANN. tit. 16, § 4701(30) (2003) (" 'Possession,' in addition to its ordinary meaning, includes location in or about the defendant's person, premises, belongings, vehicle or otherwise within the defendant's reasonable control."); *Hoey v. State,* 689 A.2d 1177, 1181 (Del.1997) (stating that "the element of possession can be satisfied by a showing that the defendant was in constructive possession of the illegal substance at the time of the alleged offense").

**34.** *Holden v. State,* 305 A.2d 320, 322 (Del. 1973).