IN THE SUPREME COURT OF THE STATE OF DELAWARE

MARKEEVIS MCDOUGAL,                    §
                                       §    No. 66, 2015
     Defendant Below-                  §
     Appellant,                        §    Court Below: Superior Court
                                       §    of the State of Delaware in and
     v.                                §    for New Castle County
                                       §
STATE OF DELAWARE,                     §    No. 1311013513
                                       §
     Plaintiff Below-                  §
     Appellee.                         §

Submitted: October 21, 2015
Decided: November 16, 2015

Before **STRINE**, Chief Justice, **HOLLAND**, and **VAUGHN**, Justices.

## *ORDER*

On this 16th day of November 2015, it appears to the Court that:

(1) Defendant-Below/Appellant Markeevis McDougal ("McDougal") appeals from a Superior Court jury verdict finding him guilty of Possession of a Firearm by a Person Prohibited ("PFBPP"),[1] Possession of Ammunition by a Person Prohibited ("PABPP"),[2] and Carrying a Concealed Deadly Weapon ("CCDW").[3] McDougal raises one claim on appeal. McDougal contends that the trial court erred when it denied his motion to suppress certain evidence because the police had conducted an

---

[1] 11 *Del. C.* § 1448.

[2] 11 *Del. C.* § 1448.

[3] 11 *Del. C.* § 1442.

illegal search of his vehicle. We find no merit to McDougal's appeal and affirm.

(2) On November 20, 2013 at approximately 2 a.m., Wilmington Police Officers Steven Bender and Steven Cancila responded to reports of a domestic dispute on West 6th Street in Wilmington. While en route, the officers were notified of shots fired in the same area. As the officers turned on to 6th Street, they observed a small group of women pointing at a silver car and screaming "he hit her." Due to this, Officer Cancila parked in front of the silver car. As the patrol car was coming to a stop, McDougal exited the silver car from the front driver side. Officer Bender exited the patrol car and ordered McDougal to put his hands up and come towards him. McDougal complied with Officer Bender's demands, leaving the door to the silver car open. Officer Cancila spoke with McDougal and then placed him in the back of the patrol car.

(3) Because the alleged victim of the domestic dispute was still in the silver car, the officers approached the vehicle together. Officer Bender approached the driver side while Officer Cancila approached the passenger side. Officer Cancila made contact with a female passenger, Tracy Brown ("Brown"). She was huddled against the door and crying. As Officer Cancila spoke with Brown, Officer Bender looked to see if there were any passengers in the back of the vehicle. Because it was difficult for him to see into the back seat due to the vehicle's tinted windows, he

stepped into the "V" area between the open door and the vehicle's frame. He did not go inside the vehicle. He observed a silver handgun with brown grips behind the driver's seat and signaled to Officer Cancila that there was a weapon in the backseat. Officer Cancila then removed Brown from the vehicle. At that point the gun was left undisturbed in the vehicle.

(4) At this time, Officers Kane and Muziol arrived. Officer Muziol approached the group of females that had formed on the sidewalk. One witness, who did not want to give her name, told Officer Muziol that there was a gun in the silver car. Officer Kane also spoke with a witness who said there was a gun in the silver car. Officer Muziol then walked across the street and spoke with Brown. He asked her who owned the silver car, to which she replied "it's both of ours."[4] He then asked if she minded if he searched the car, and she said no. Officer Muziol then walked over to the silver car. At this point the door was closed, although it is unclear who closed it. Officer Muziol opened the door and saw the handgun behind the driver's seat. Brown then ran over and stood between the door and the car, attempting to block where the officer had seen the weapon. Brown was removed from the area, and Officer Muziol shut the door to the vehicle and waited for the evidence detection unit to collect the gun. Officers Muziol, Kane, Bender, and Cancila were not able to discuss their

---

[4] Appellant's Op. Br. App. at A22.

3

observations of the gun until after Officer Muziol saw the weapon.

(5) McDougal was arrested and indicted on charges of PFBPP, PABPP, and CCDW. McDougal filed a motion to suppress any evidence seized as a result of the search of his vehicle on the basis that Brown did not have the authority to consent to a search of the vehicle. The trial court denied McDougal's motion, finding that the gun was in plain view. The jury found McDougal guilty on all three counts.

(6) "We review a trial court's denial of a motion to suppress for abuse of discretion."[5] "To the extent the claim of error implicates questions of law; however, the standard of review is *de novo*."[6] "We review a trial judge's factual findings to determine whether there was sufficient evidence to support the findings and whether those findings were clearly erroneous."[7]

(7) "An individual's right to be free of unlawful searches and seizures in Delaware is secured by" the Fourth Amendment to the United States Constitution as well as Article I, Section 6 of the Delaware Constitution.[8] The plain view doctrine provides an exception to the Fourth Amendment's warrant requirement. "A law enforcement officer may seize, without a warrant, contraband that the officer observes in plain view, but only if (1) the officer is lawfully in a position to observe the

---

[5] *Holden v. State*, 23 A.3d 843, 846 (Del. 2011).
[6] *Id.*
[7] *Id.*
[8] *Jones v. State*, 745 A.2d 856, 860 (Del. 1999).

4

contraband, (2) the item's evidentiary value is immediately apparent, and (3) the officer has a lawful right of access to the item."[9]

(8) McDougal's claim is unavailing. First, Officer Bender testified that he looked in the back to determine if anyone else was in the car, which he was unable to determine earlier because McDougal chose to exit his car and approach the officers. Officer Bender did not open the door as it was left open by McDougal. Further, Officer Bender did not cross the threshold of the door frame. Thus, Officer Bender was outside of the vehicle and was lawfully in a position to observe the contraband.

(9) Second, the evidentiary value was immediately apparent. It is illegal to carry a concealed deadly weapon without a proper license.[10] While a gun may be easily discoverable through routine police procedures, it may still be considered "concealed" for purposes of 11 *Del. C.* § 1442. "[A]n item may be in plain view for search-and-seizure purposes, though concealed for purposes of the substantive criminal law."[11] Officer Bender testified that he immediately identified the object as a handgun. Thus, the handgun had immediately apparent evidentiary value, relevant to the offense of CCDW.

---

[9] *Hardin v. State*, 844 A.2d 982, 985 (Del. 2004).

[10] 11 *Del. C.* § 1442.

[11] *Robertson v. State*, 704 A.2d 267, 269 (Del. 1997).

5

(10) The final prong is satisfied based upon the first two prongs. Since Officer Bender was lawfully in a position to observe the handgun and the evidentiary value of the gun was immediately apparent because it is illegal to conceal a deadly weapon in Delaware, the warrantless seizure of the gun was proper. Thus, McDougal's rights under the Fourth Amendment to the United States Constitution and Article I, Section 6 of the Constitution of the State of Delaware were not violated, and his motion to suppress was correctly denied by the Superior Court. The gun was properly seized based upon Officer Bender's observing the gun in his plain view when he stood in the "V" between the car door and the car's frame and looked inside.

(11) The parties have not raised consent as an issue in this appeal. Therefore, we do not discuss it.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

Justice

6