**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2411006455 |
| | ) | |
| DENNIS O. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: January 6, 2026
Decided: January 28, 2026

*Upon Defendant's Motion to Suppress/Motion in Limine,*
**DENIED.**

**ORDER**

1.     On November 14, 2024, law enforcement officers working as part of the Governor's Task Force ("GTF"), a multi-agency law enforcement team,[1] arrested Williams and charged him with Drug Dealing (three counts); Drug Possession; Possession, Purchase, Ownership, or Control of Ammunition by a Person Prohibited; Resisting Arrest; Possession of Drug Paraphernalia; Failure to wear a seatbelt; and Failure to use a turn signal.[2]

---

[1] D.I. 16 ("Def. Mot.") at Ex. A, p.1.

[2] D.I. 5.

2. Williams has moved to suppress evidence obtained at the time of his arrest and seeks a ruling *in limine* to apply a "missing evidence instruction regarding the unavailable Mobile Video Recording ("MVR") related to [Williams] arrest."[3] He contends he "was illegally detained absent probable cause" and, for this reason, argues that "all evidence flowing from the illegal arrest should be suppressed."[4] The State opposes Williams' motion.[5] On January 6, 2026, the parties elicited testimony, offered documentary, video, and photographic evidence, and presented oral argument in support of their respective positions.[6]

## FACTS[7]

3. On November 14, 2024, at approximately 11:23 a.m., Probation Officer Matthew Barba observed a Toyota Rav-4 traveling westbound on Maryland Avenue towards Race Street in the City of Wilmington. Officer Barba noticed that the driver of the vehicle was not wearing a seatbelt and communicated his observation to other officers.

---

[3] Def. Mot. at 1.

[4] *Id*.

[5] D.I. 25 ("State Resp.").

[6] D.I. 26.

[7] The facts are derived from the testimony and evidence presented during the January 6, 2026, hearing.

4.      Delaware State Police ("DSP") Detectives Jesse Guevara and Jared Balan, in separate vehicles, began following the Rav-4 and watched the vehicle fail to signal its intent to turn within 300 feet before turning left from Maryland Avenue onto DuPont Road and then turn left from DuPont Road onto Hillside Road without engaging a turn signal at all. Detective Balan stopped the vehicle, approached the front passenger side of the car, and contacted the driver – Williams – and front seat passenger – Stephanie Marrero.

5.      Shortly after Detective Balan stopped the vehicle, Detective Guevara arrived, approached the front driver's side of the car, and asked Williams for identification. Williams responded that he did not have identification with him. Detective Guevara testified, and Body Worn Camera ("BWC") footage confirmed, Williams appeared nervous and failed to make or maintain eye contact.

6.      Detective Guevara asked Williams to exit the vehicle. Williams hesitated and asked Detective Guevara why he – Williams – needed to get out of the vehicle. After repeatedly asking Williams to exit the vehicle, Detective Guevara secured Williams' left hand and guided him out of the vehicle.

7.      As Williams exited, Detective Balan, standing on the passenger side of the car, observed what he described as blue packaging cupped in Williams' right hand; Detective Balan explained that, in his experience, heroin and fentanyl are often packaged in this manner. After making this observation, Detective Balan shouted

3

"hands, hands" to inform Detective Guevara and other assisting officers that Williams had something in his hand. Officers then attempted to restrain Williams and, to do so, deployed a taser. After subduing Williams, officers found what appeared to be bags of heroin on the ground. These bags were not present before Williams exited the vehicle.

8. After securing Williams and finding the contraband on the ground, officers searched the vehicle. Inside the vehicle, officers found more packaged drugs and a bag located in the rear passenger seat. Officers found more drugs and documents belonging to Williams in the bag.

**ANALYSIS**

9. "On a motion to suppress evidence seized during a *warrantless* search, the State bears the burden of proof."[8] The State must establish that "the challenged search comported with the defendant's constitutional rights."[9]

10. The United States Constitution and Delaware Constitution protect citizens from "unreasonable searches and seizures."[10] "A police officer who

---

[8] *Juliano v. State*, 254 A.3d 369, 392 (Del. 2020)) (cleaned up) (quoting *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001) (emphasis in original).

[9] *State v. Medina*, 2020 WL 104323, at *3 (Del. Super. Ct. Jan. 7, 2020 (citing *Hunter*, 783 A.2d at 560).

[10] U.S. Const. amend IV; Del. Const. Art. I, § 6. To the extent the Delaware Constitution may provide broader protections than the United States Constitution, neither party makes that argument here; thus, the Court will construe the protections to be identical. *Jones v. State*, 745 A.2d 856 (Del. 1999). Where, as here, the State

4

observes a traffic violation has probable cause to stop the vehicle and its driver."[11]

"During a lawful traffic stop, a police officer may order both the driver and passengers out of the vehicle pending completion of the traffic stop."[12]

11.    "Under *Terry v. Ohio*, an officer is justified in stopping an individual when the officer possesses a reasonable, articulable suspicion that the individual was committing, had committed, or was about to commit a crime."[13]  "[A]n arresting officer is 'entitled to rely on information relayed to him through official channels' and . . . '[t]he arresting officer himself need not be apprised of the underlying circumstances which have risen to a conclusion of probable cause.'"[14]  Title 11, Section 1902 of the Delaware Code, Delaware's codification of *Terry*,[15] provides that "a peace officer may stop any person abroad, or in a public place, who the officer has reasonable grounds to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and

___

Constitution is mentioned, but no argument is offered, any argument to extend State protections  beyond its federal counterpart is waived.  *Thomas v. State*, 293 A.3d 139, 141 (Del. 2023).

[11] *Holden v. State*, 23 A.3d 843, 847 (Del. 2011) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)).

[12] *Id.* (citing *Maryland v. Wilson*, 519 U.S. 408, 415 (1997)).

[13] *Thomas v. State,* 8 A.3d 1195, 1198 (Del. 2010) (citing *Terry v. Ohio*, 392 U.S. 1 (1968).

[14] *Id.* (quoting *State v. Cooley,* 457 A.2d 352, 355 (Del. 1983)).

[15] *Id.*

5

destination."[16] And, under Section 1902(b), "[a]ny person so questioned who fails to give identification or explain a person's actions to the satisfaction of the officer may be detained and further questioned and investigated."[17] The officer must, "'point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrants the intrusion.'"[18] "In determining whether a reasonable articulable suspicion exists, [the Court] 'must examine the totality of the circumstances surrounding the situation as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts.'"[19]

12. "It has long been clear that the duration and execution of a traffic stop, like any investigative stop, must be reasonably related to the initial purpose of the stop."[20] "Under the Fourth Amendment, a traffic stop is a seizure of a vehicle and its occupants by the State."[21] "A stop is subject to constitutional limitations. Specifically, the State must demonstrate that the stop and any subsequent police

---

[16] 11 Del. C. § 1902(a).

[17] 11 Del. C. § 1902(b).

[18] *Holden v. State*, 23 A.3d at 847 (quoting *State v. Henderson*, 892 A.2d 1061, 1064-65 (Del. 2006)).

[19] *Id.* (quoting *Jones v. State*, 745 A.2d 856, 861 (Del. 1999) (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981))).

[20] *Caldwell v. State*, 780 A.2d 1037, 1042 (Del. 2001).

[21] *Womack v. State*, 296 A.3d 882, 890 (Del. 2023) (quoting *Caldwell*, 780 A.2d at 1045.).

investigation were reasonable in the circumstances."[22] Thus, under the Fourth Amendment, any detention of a vehicle or its occupants beyond that required to complete the purpose of the traffic stop "must be supported by independent facts sufficient to justify the additional intrusion."[23] First, "the stop must be justified at its inception by reasonable suspicion of criminal activity" and second, "the stop and inquiry must be 'reasonably related in scope to the justification for their initiation.'"[24] The Court's assessment involves a "fact-intensive inquiry to ensure that the pursuit of the investigation unrelated to the traffic violation is not unreasonably attenuated for the initial purpose of the stop."[25]

13. Here, the evidence establishes that Williams committed traffic violations – failing to wear a seatbelt and failing to signal[26] – providing the officers cause to stop and engage with Williams. Officers then were permitted to request basic information from Williams at roadside. The officers initial encounter and questioning were directly related to the purpose of the traffic stop. During the encounter, Willliams displayed nervous behavior and failed to produce identifying

---

[22] *Caldwell*, 780 A.2d at 1045-46 (citations omitted).

[23] *Juliano v. State*, 254 A.3d at 389 (quoting *Caldwell*, 780 A.2d at 1047 (citing *Ferris v. State*, 735 A.2d 491, 499 (1999))).

[24] *Caldwell*, 780 A.2d at 1046 (citations omitted).

[25] *Juliano*, 254 A.3d at 389.

[26] 21 Del. C. § 4802(a)(1); 21 Del. C. § 4155(b).

7

documentation. Officers were justified in asking him to exit the vehicle. The events that then transpired – over the course of a few seconds – justified the progression of steps taken by the officers. Officers were justified in physically securing Williams after Detective Balan observed and alerted them to something cupped in Williams' right hand. When officers found the contraband Williams discarded, they were justified in searching him, his vehicle, and objects within the vehicle capable of concealing drugs.[27]

14.     Williams suggests the circumstances of this encounter require the Court to inject a "missing evidence" inference into its legal assessment. The Court declines to do so. Williams argues that the State intentionally failed to collect and preserve MVR footage of his actions leading to the traffic stop and, thus, a *Deberry v. State*[28] missing evidence inference must be applied to the Court's assessment of his encounter with investigators.[29] Applying this inference, Williams asserts, eliminates the basis for his stop and renders the stop and subsequent search unconstitutional.[30] Williams argues that "[t]he importance of the evidence at issue is impossible to overstate, given that the entire Fourth Amendment-based analysis of the traffic stop

---

[27] *Hall v. State*, 981 A.2d 1106, 1114 (Del. 2009) (quoting *Arizona v. Gant*, 556 U.S. 332, 347 (2009) (citing *United States v. Ross,* 456 U.S. 798, 820-21 (1982))).

[28] 457 A.2d 744 (Del. 1983).

[29] Def. Mot. ¶ 10.

[30] Def. Mot. ¶ 21.

hinges on what led up to it."[31]  MVR footage, he contends, would have objectively captured Williams' alleged traffic violations and would relieve the Court from assessing the bias or credibility of the arresting officers.[32]

15.    Lieutenant David Diana, head of the GTF at the time of Williams' arrest, testified that, when the GTF officers stopped Williams, their vehicles were not equipped with MVR cameras.  He further explained that DSP policy required (then and now) that "personnel *equipped with cameras* shall make all reasonable attempts to ensure the activation of the respective device when such use is within policy and appropriate to the proper performance of official duties."[33]  This requirement, of course, cannot apply where a vehicle is not equipped with a camera.

16.    The State has a duty to collect and preserve evidence, and in some circumstances a negative inference may be imposed for its failure to do so.[34]  The Court must assess "whether the government had a duty to [collect or] preserve the [MVR] recording."[35]  Only where the State breaches an existing duty should this Court consider what consequences flow from the breach.[36]  The Delaware Supreme

---

[31] Def. Mot. ¶ 17.

[32] Def. Mot. ¶ 18.

[33] Def. Mot. Ex. B. (emphasis added).

[34] *See generally, Weber v. State*, 38 A.3d 271, 274-75 (Del. 2012).

[35] *Hunter v. State*, 55 A.3d 360, 369 (Del. 2012).

[36] *Id.* at 368 (Del. 2012) (quoting *Johnson v. State*, 27 A.3d 541, 545-46 (Del. 2011)).

Court "has declined to prescribe the exact procedures that are necessary for the various law enforcement agencies in this State to follow, in order to fulfill their duties to preserve evidence."[37] This Court, too, declines to prescribe the investigatory procedures sought to be imposed by Williams.

17. Williams argues that "the State, through its agents on GTF, breached its obligation to gather evidence."[38] He points to the Delaware State Police "Law Enforcement Electronic Recorded Interactions with the Public" policy in support of his position.[39] Williams quotes a portion of the policy which states that "[c]ameras shall be activated to record all contacts in the performance of official duties, including . . . Any time a vehicle is stopped at the command of the Trooper for a traffic/criminal violation or investigation. . . ."[40] But Williams ignores the fact that the policy applies to "Division personnel *equipped with cameras*."[41] Here, the vehicles involved were not equipped with cameras. Undeterred, Williams argues that this Court should find, as a matter of law, that all law enforcement vehicles must

---

[37] *Hammond v. State*, 569 A.2d 81, 89 (Del. 1989) (quoting *Deberry v. State*, 457 A.2d at 752).

[38] Def. Mot. ¶ 17.

[39] Def. Mot. Ex. B; *See* Def. Mot. ¶ 9.

[40] Def. Mot. ¶ 9 (quoting Ex. B pg. 2).

[41] Def. Mot. Ex. B. (emphasis added).

be equipped with MVR cameras and, if not so equipped, the Court must infer that any recording that could have been made would be exculpatory.

18. Williams' position finds no support in extant Delaware law. Where, as here, officers find themselves assigned to operate vehicles not equipped with MVR, a missing evidence inference does not necessarily follow.

19. Williams relies on *State v. Skinner*, where this Court granted a defendant's motion to suppress evidence seized during a traffic stop.[42] In *Skinner*, as here, the defendant seems to be "under the impression MVS/body cam footage is required for every vehicle stop."[43] But the Court did not accept Skinner's position. Rather, the Court found the State presented "underwhelming" evidence of a reasonable articulable suspicion justifying the encounter with Skinner.[44] "There was not enough information provided by the State such as when the officers first started following Mr. Skinner's car, how far they followed him and what they observed to determine whether he violated [Delaware law]."[45] The Court did not find that a missing evidence inference should be applied where an officer does not record a traffic stop.

---

[42] *State v. Skinner*, 2023 WL 2194537 (Del. Super. Ct. Feb. 10, 2023).

[43] *Id.* at *1.

[44] *Id.* at *3.

[45] *Id.*

11

20.   Williams distinguishes the facts of his case from those presented in *State v. Thomas* where the Court of Common Pleas declined to provide a missing evidence inference where an officer's MVR malfunctioned.[46]   Indeed, the cases are readily distinguishable.  Here, officers operated vehicles not equipped with MVRs thus obviating an assessment of functionality.  Nonetheless, the Court declines to impose, *ex post facto* and for the first time, a duty to record *and then* apply a missing evidence inference in its assessment of the officer's testimony where an interaction is not recorded.

21.   Here, the State presented ample evidence upon which this Court is able to assess the officers' encounter with Williams.  At least three officers independently observed Williams' driving infractions and, once stopped, the entirety of Williams' encounter was captured on multiple body worn cameras.  Unlike *Skinner*, in this case the State offered sufficient information to allow the Court to find Williams violated various traffic laws.

22.   To the extent any question remains concerning the officers' extension of Williams' stop to include a search of the vehicle, the evidence is also admissible under the doctrine of inevitable discovery.  Under the inevitable discovery doctrine, "if evidence found because of a Fourth Amendment violation would inevitably have

---

[46] *State v. Thomas*, 2016 WL 6820636, at 2 (Del. Com. Pl. Nov. 16, 2016).

been discovered through lawful means in the absence of the illegality, it [will] not be excluded."[47] "Invocation of the [inevitable discovery] exception is particularly appropriate when routine police investigatory procedures are in progress and the challenged behavior merely accelerates discovery of the evidence."[48]

23.     The officers were justified in stopping Williams' vehicle. Williams then failed to identify himself; however, during the course of the interaction, the officers learned Williams' name, that he was an active probationer, and that there existed an active warrant for Williams' arrest for violating his probation. Thus, officers were entitled to arrest Williams. And, of course, this arrest would have resulted in a search of his person, the vehicle, the bag, and, ultimately, to the seizure of the contraband Williams seeks to suppress.[49] Because officers were engaged in routine police investigatory procedures – seeking to identify Williams – when the challenged behavior occurred, the application of inevitable discovery is appropriate.[50]

---

[47] *Garnett v. State*, 308 A.3d 625, 634-35 (Del. 2023) (citing *Cook v. State*, 374 A.2d 264, 267-68 (Del. 1977)).

[48] *State v. Preston*, 2016 WL 5903002, at *4 (Del. Super. Ct. Sept. 27, 2016) (citing *Cook*, 374 A.2d at 268).

[49] *See e.g., Hardin v. State,* 844 A.2d 982 (Del. 2004) (drugs found on defendant's person and in a car admissible under inevitable discovery exception to the exclusionary rule).

[50] *Garnett*, 308 A.3d at 646-47. The Delaware Supreme Court instructs that, while the inevitable discovery doctrine is not "inherently inconsistent with Article 1, § 6 of the Delaware Constitution," that Court's acceptance of the exception "assumes that it will be applied only when it is clear that the police have not acted in bad faith

## CONCLUSION

The Court concludes that the investigating officers were constitutionally justified in each phase of their encounter with Williams – the vehicle stop, Williams' removal from the vehicle, the search of the vehicle, and the search of the bag. And, alternatively, to the extent that any phase of their interaction with Williams fails to meet constitutional standards, Williams unique status as a probationer subject to an outstanding warrant for his violation of terms of his probation validates his roadside arrest and, thus, the evidence seized is admissible under the inevitable discovery doctrine. Finally, the Court will not accept Williams' invitation to inject a missing evidence inference into its assessment of the officers' actions. Williams' *in limine* request for a missing evidence inference is **DENIED**, and his Motion to Suppress is **DENIED.**

**IT IS SO ORDERED.**

_____
Sean P. Lugg, Judge

---

to accelerate the discovery of the evidence in question." *Id.* (cleaned up). Here, the Court finds the officers did not act in bad faith.

14